# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### FT. LAUDERDALE DIVISION

## 00-6202 

KAREL G. JOHNSON, and
LISE H. JOHNSON, his wife,

       Plaintiffs,

vs.

AUTOMOBILI LAMBORGHINI SpA,
MICHAEL KIMBERLY, JON DOE I,
JON DOE II, and JON DOE III, Individually,

       Defendants.

_____/

CIVIL ACTION NO.
MAGISTRATE JUDGE

## COMPLAINT

Plaintiff, KAREL G. JOHNSON and LISE H. JOHNSON, his wife (hereinafter collectively "JOHNSON"), sues the Defendant, AUTOMOBILI LAMBORGHINI, SpA ("ALSPA") and says:

### GENERAL ALLEGATIONS

1.    This is an action for damages in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of interest, attorney's fees, and costs.

2.    The Plaintiff, JOHNSON, is a resident of Saint Johns County, Florida.

3.    The Defendant, ALSPA, is an Italian corporation with its principal place of business located in Sant' Agata Bolagnese, Italy. At all times material hereto, ALSPA manufactured the subject vehicle, the 1996 Lamborghini Diablo Roadster (the "Diablo") and placed the same in the stream of commerce and thereafter sold it to the Plaintiff in Duval County, Florida.

4.    Jurisdiction is proper in this Court because there is complete diversity of citizenship between the Plaintiff and Defendant herein and the amount in controversy exceeds Seventy Five

BRINKLEY, McNERNEY, MORGAN, SOLOMON & TATUM, LLP
200 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FLORIDA 33301 (954) 522-2200



Civil Action No.
Magistrate Judge

Thousand Dollars ($75,000.00). Also, the Defendant conducts business in the State of Florida and has contacts with Florida such that it could and should reasonably expect to be brought into this Court for any wrongdoing which it may undertake. Finally, jurisdiction is also conferred on this Court pursuant to 15 U.S.C. § 2310 (d)(1)(b).

5.      The Defendant is in the business of manufacturing and distributing Lamborghini automobiles, including the Diablo model. Although the vehicles are sold to the ultimate purchaser by a ALSPA authorized dealer, ALSPA receives a direct pecuniary benefit (as well as intangible benefits) from every Lamborghini automobile that is sold.

6.      Prior to 1994, ALSPA's vehicles were not designed for every day use in ordinary driving conditions, as they did not have power-steering, and the dashboard was positioned in such a way as to obstruct the driver's field of vision.

7.      In or around 1996, ALSPA's first started selling the Diablo. The Diablo model was designed with power-steering, electric windows, a reconstructed dashboard, and a built in hydraulic lift so the car (which is extremely low to the ground) could go over speed bumps in malls, apartment complexes, etc, as well as other modifications. These modifications were made so that ALSPA could market and sell the Diablo as a "daily driving car."

8.      ALSPA marketed the Diablo as a daily driving car in order to increase its sales of the Diablo and to make the vehicle more desirable to own.

9.      Prior to the Diablo being sold to JOHNSON, ALSPA was aware of a multitude of design and manufacturing defects which the Diablo suffered from. These problems, which were known to ALSPA and its corporate officers and directors included, but were not limited to:

2

Civil Action No.
Magistrate Judge

(a)    Severe water leakage into the Diablo through the roof, and the passenger's and driver's side door windows, which prohibits the vehicle from being driven in rainy conditions and which saturates the interior of the vehicle when it is washed;

(b)    Jamming of the passenger and driver doors caused by the doors becoming unaligned, thereby trapping the driver and passenger in the Diablo;

(c)    Defective Diablo paint jobs resulting in paint bubbles, which ALSPA frequently re-painted without advising the ultimate purchaser (at a cost of over $500.00 per re-painting);

(d)    Defective Diablo batteries which frequently go dead without warning and which are not covered by warranty;

(e)    Melting of the Diablo rear bumper and parts surrounding the engine (such as rear lights) due to the placement, power and resulting heat of the engine;

(f)    The Diablo passenger and driver electric windows frequently jam and will not open, trapping the occupants inside the Diablo;

(g)    The Diablo air conditioner leaks water onto the floor of the interior, causing damage thereto;

(h)    Rusting of the Diablo vehicle;

(i)    Engine smoke and fires causing the Diablo to burn to the ground without warning.

Plaintiff's vehicle experienced problems (a,b,e,g and j) and would have suffered (c, d, f, h, and i) had he continued to use the vehicle as a "daily driving" car.

3

Civil Action No.
Magistrate Judge

10.     Although ALSPA and its corporate officers and directors were at all times material hereto aware of these defects, it did not remedy them. In fact, ALSPA and its corporate officers and directors proceeded at that time and continued thereafter to proceed marketing and selling the Diablo as a "daily driving car", although it knew then and knows today that the Diablo could not and cannot be driven as such because of the existing defects.

11.     In or around July 15, 1996, JOHNSON purchased a Diablo from Duval Acura in Jacksonville, Florida. The seminal reason underlying JOHNSON's purchase was the repeated assurances from ALSPA that the Diablo could be used as a "daily driving car."

12.     JOHNSON was told orally that the Diablo could be used as a "daily driving vehicle."

13.     JOHNSON's Diablo is/was covered by a two-year factory warranty.

14.     However, none of the limitations of implied warranties are enforceable as they are not conspicuous as defined under Florida Statutes, §672.316(2).

15.     Further, any attempted limitations of remedy are unenforceable as they cause the warranty to fail of its essential purpose and/or render it unconscionable.

16.     Finally, the purported limitations are unenforceable as the warranty is a "full" warranty as defined under the Magnuson-Moss Act, 15 U.S.C., §2303.

17.     If JOHNSON had known of the existing design and manufacturing defects, as more fully set forth above in paragraph 8, and the fact the Diablo could not be driven as a daily driving vehicle, then JOHNSON would not have purchased the Diablo.

18.     The representation that no defects existed and that the Diablo was a daily driving vehicle are material facts to JOHNSON's decision to purchase the Diablo.

4

Civil Action No.
Magistrate Judge

19.    JOHNSON detrimentally relied upon the oral and written misrepresentations of ALSPA and its corporate executives as to those material facts at the time he made his decision to purchase the Diablo.

20.    JOHNSON has suffered damage as a result of his reliance upon those material facts.

21.    Since the purchase of his Diablo, JOHNSON has experienced the following problems with his Diablo:

(a)    Frequent jamming of the passenger and driver doors, thereby trapping the passengers inside (remedied only by placing car on a hydraulic lift and "springing" the doors open);

(b)    Electronic windows, at times, cease to function;

(c)    Severe damage to the Diablo's interior due to water leakage from rain creating a dangerous driving condition;

(d)    Severe water damage to custom luggage, due to a water leak in the trunk of the car;

(e)    Poorly designed windshield wiper which, when activated, pushes water inside the car;

(f)    Misplaced seat belt fastener that causes injures to the Diablo's operator's hands and fingernails each time operator engages the buckle and fastener;

(g)    Poorly designed accelerator and brake placement, that results in the operators foot being locked behind the brake petal after depressing the accelerator;

(h)    Poor vehicle aerodynamics and seal that cause extensive creaking and rattling while driving the car;

5

Civil Action No.
Magistrate Judge

(i)     Flashing of the steering control/ dashboard lights on a daily basis;

(j)     The sunroof latches automatically detach and swing freely after the Diablo is driven over any type of bump, striking the driver and passenger in the head;

(k)     Oil leaking onto the engine during use, causing intense smoke and a risk of fire;

(l)     The Diablo's battery fails frequently and unexpectedly, stranding the driver and any passenger(s); this required the installation of an after market battery charger, which has not solved the problem;

(m)     Little or no suspension, producing an extremely rough ride;

(n)     The Diablo cannot travel over speed bumps in shopping centers, parking lots, housing developments, malls, gas stations, grocery stores, etc., (even when the vehicle is elevated), resulting in damage to the front fender and bottom of the vehicle;

(o)     The Diablo's defective design of the gas tank and its inability to properly accommodate a U.S. gas hose nozzle make it difficult to fill the Diablo with gas, creating a 10-15 minute project each time the Diablo is refilled.

(p)     The Diablo cannot be parked in traditional parking spaces because the vehicle is so low to the pavement that the front end of the vehicle makes contact with the cement parking stop causing front end damage.

(q)     The black metal rear vent/grill and the Diablo emblem have discolored and has aged disproportionally with the rest of the vehicle creating an eyesore;

(r)     Required adjustment for loose passenger seating, and continues to be loose;

6

Civil Action No.
Magistrate Judge

(s)    The air conditioning works infrequently and when it does work it fails to cool the interior of the Diablo;

(t)    The steering control "error" light remains on at all times.

(u)    The steering wheel position lock is defective which causes the steering wheel to drop down and strike the driver in the knees while operating the vehicle;

(v)    The interior leather on the seats, door and dashboard is discolored, stained and shows signs of accelerated aging due to water saturation from the electric windows and door seals malfunctioning and allowing large quantities of water to enter the vehicle;

(w)    While operating, the targa roof latches can spontaneously release causing a risk of total detachment;

(x)    Severe burns from the engine can result from one attempting to check the oil with the "dipstick".

22.    Each of the above-referenced defects are material to JOHNSON's "daily use" and enjoyment of his Diablo.

23.    Since JOHNSON's purchase, he has not been able to drive the Diablo as a "daily driving car."

24.    JOHNSON's Diablo has been in for repairs at least ten (10) times, accumulating over thirty (30) days in repair time, and the defects still have not been remedied or fixed.

25.    All conditions precedent to the filing of this lawsuit have occurred, or have been performed or waived. In particular, Plaintiff served written notice of defect on or before June 26, 1998, after at least ten (10) attempts by the Defendant to remedy the defects.

7

Civil Action No.
Magistrate Judge

26.     On or about July 13, 1998, Plaintiff, through his agent, served oral notice of breach and revoked acceptance of the vehicle.

27.     On or about June 26, 1998, Plaintiff through his agent, served a written notice of breach and revoked acceptance of the vehicle. However, Plaintiff maintains a possessory, security interest in the vehicle for his damages pursuant to §672.711(3), Florida Statutes.

## COUNT 1

## BREACH OF IMPLIED WARRANTY OF FITNESS
## FOR A PARTICULAR PURPOSE AS AGAINST
## LAMBORGHINI SpA

28.     The Plaintiff hereby adopts and realleges the allegations contained in the foregoing paragraphs 1-27 above as though fully set forth herein and would further show that this is an action for breach of implied warranty for a particular purpose, pursuant to Florida Statutes, §672.315.

29.     ALSPA had reason to know at the time of contracting of the particular purpose for which the Plaintiff intended the vehicle, to wit, to use what is a racing-bred, high performance automobile for daily, commuter-type use.

30.     JOHNSON relied upon the Seller's skill and judgment in selecting or furnishing the subject vehicle for such use.

31.     Any attempts to exclude this implied warranty are unenforceable due to the fact that it has not been specifically disclaimed and any attempted disclaimer is not conspicuous.

32.     The express warranty containing the disclaimers is a "full" warranty under the Magnuson-Moss Consumer Protection Act, rendering any such attempt at limitation of implied

8

Civil Action No.
Magistrate Judge

warranties invalid.

33.     JOHNSON timely served notice of breach of warranty.

34.     ALSPA breached its implied warranty of fitness for a particular purpose by failing to provide JOHNSON with the Diablo which was suited for the particular purpose for which it was guaranteed -- a daily driving vehicle. Specifically, the Diablo cannot be driven on a day-to-day basis. Instead, the Diablo is a highly specialized automobile which may not be driven in the rain or on the streets and highways.

35.     The combination of horsepower, suspension, manufacturing techniques, design and construction render the vehicle incapable of being driven with any frequency or regularity as a "day-to-day" automobile. Instead of a daily driving vehicle, the Diablo is a specialized automobile, useful only for highly particularized and unique occasions.

36.     As a direct and proximate result ALSPA's breach, JOHNSON is entitled to recover as damages for the non-conformities, any loss resulting in the ordinary course of events from the breach, including but not limited to the difference between the value of the vehicle as accepted and the value it would have had if it had been as warranted and represented.

37.     JOHNSON is further entitled to incidental damages consisting of those expenses reasonably incurred in inspection, receipt, transportation, and care and custody of the vehicle, and his expenses and commissions in connection with effecting cover, and further consequential damages including his loss of insurance, maintenance costs, repair costs, insurance costs, storage and other maintenance costs.

38.     JOHNSON has retained the undersigned counsel and has promised to pay reasonable

9

Civil Action No.
Magistrate Judge

fees and costs. JOHNSON has incurred reasonable attorney fees and costs in connection with his

representation herewith, for which he makes demand pursuant to 15 U.S.C., §§2310(d), as further

pled in this Complaint.

**WHEREFORE**, Plaintiff demands judgment for compensatory damages, interest, costs and

attorney fees against Defendant LAMBORGHINI SpA.

## COUNT 2

### BREACH OF IMPLIED WARRANTY
### OF MERCHANTABILITY AS AGAINST
### LAMBORGHINI SpA

39.     JOHNSON hereby adopts and realleges the allegations contained in paragraphs 1-27

and 28 through 38 above as though fully set forth herein and would further show that this is an action

for breach of implied warranty of merchantability, pursuant to Florida Statutes, §672.315.

40.     ALSAP knew at the time of contracting the sale of the Diablo with JOHNSON that

JOHNSON intended the Diablo be used not as a specialized racing-bred, high performance

automobile but instead as a vehicle for daily, commuter-type use.

41.     JOHNSON relied upon the Seller's (who is seller) skill and judgment in selecting or

furnishing the subject vehicle for such use, and any attempts to exclude this implied warranty are

unenforceable due to the fact that it has not been specifically disclaimed. Further any attempted

disclaimer is not conspicuous.

42.     The express warranty containing the disclaimers is a "full" warranty under the

Magnuson-Moss Consumer Protection Act, rendering invalid any such attempt at limitation of

implied warranties.

10

Civil Action No.
Magistrate Judge

43.     JOHNSON timely served notice of breach of warranty.

44.     Defendant ALSPA warranted that the vehicle was merchantable and in particular that it was fit for the ordinary purposes for which such vehicle was to be used and would further pass without objection in the trade under the contract description.

45.     The vehicle was not merchantable and the Defendant ALSPA breached its implied warranty of merchantability.

46.     As a direct and proximate result of the Defendant ALSPA's breach, JOHNSON is entitled to recover as damages for the non-conformities, any loss resulting in the ordinary course of events from the breach, including but not limited to the difference between the value of the vehicle as accepted and the value it would have had if it had been as warranted and represented.

47.     JOHNSON is further entitled to incidental damages consisting of those expenses reasonably incurred in inspection, receipt, transportation, and care and custody of the vehicle, and his expenses and commissions in connection with effecting cover, and further consequential damages including his loss of insurance, maintenance costs, repair costs, insurance costs, storage and other maintenance costs.

48.     JOHNSON has retained the undersigned counsel and has agreed to pay the same reasonable attorneys' fees and costs. JOHNSON has incurred reasonable attorneys' fees and costs in connection with his representation herewith, for which he makes demand pursuant to 15 U.S.C., §§2310(d), as further pled in this Complaint.

**WHEREFORE**, Plaintiff demands judgment for compensatory damages, interest, costs and attorney fees against Defendant LAMBORGHINI SpA.

11

Civil Action No.
Magistrate Judge

## COUNT 3

## BREACH OF EXPRESS WARRANTY
## AGAINST LAMBORGHINI SpA

49.    JOHNSON hereby adopts and realleges the allegations contained in the foregoing

paragraphs 1-27, 28 through 38 and 39 through 48 above as though fully set forth herein and would

further show that this is an action for breach of express warranty pursuant to Florida Statutes Ch.

672.313 against Defendant ALSPA.

50.    Defendant ALSPA made the express warranties to JOHNSON as more fully set forth

above including, but not limited to, the representation that the vehicle could be driven on a day-to-

day basis; that the vehicle would be repaired; that any problems in the vehicle would be remedied

within the terms of the warranty and that the vehicle would operate as an acceptable automobile to

the average customer, including JOHNSON.

51.    However, any attempted limitations in the warranty as to remedies cause the warranty

to fail of its essential purpose or render it unconscionable.

52.    Any attempted limitations in the warranty are unenforceable as the warranty is a "full"

warranty as defined under the Magnuson-Moss Consumer Protection Act.

53.    Plaintiff timely served notice of breach of warranty.

54.    As a direct and proximate result of the Defendant ALSPA's breach, JOHNSON is

entitled to recover as damages for the non-conformities, any loss resulting in the ordinary course of

events from the breach, including but not limited to the difference between the value of the vehicle

as accepted and the value it would have had if it had been as warranted and represented.

12

Civil Action No.
Magistrate Judge

55.     JOHNSON is further entitled to incidental damages consisting of those expenses reasonably incurred in inspection, receipt, transportation, and care and custody of the vehicle, and his expenses and commissions in connection with effecting cover, and further consequential damages including his loss of insurance, maintenance costs, repair costs, insurance costs, storage and other maintenance costs.

56.     The Plaintiff has retained the undersigned counsel and has agreed to pay the same reasonable attorneys' fees and costs. JOHNSON has incurred reasonable attorneys' fees and costs in connection with his representation herewith, for which he makes demand pursuant to 15 U.S.C., §§2310(d), as further pled in this Complaint.

**WHEREFORE**, Plaintiff demands judgment for compensatory damages, interest, costs and attorney fees against Defendant LAMBORGHINI SpA.

## COUNT 4

### VIOLATION OF MAGNUSON-MOSS CONSUMER PROTECTION ACT AGAINST LAMBORGHINI SpA

57.     JOHNSON hereby adopts and realleges the allegations contained in paragraphs 1-56 above as though fully set forth herein and would further show that this is an action for violation of the Magnuson-Moss Consumer Protection Act pursuant to 15 U.S.C. §2310(d).

58.     JOHNSON's Diablo is defective and still remains defective even after JOHNSON allowed ALSPA and/or its agents the reasonable opportunity to cure the aforementioned defects.

59.     JOHNSON fully served notice of the defect(s) upon ALSPA and/or its agents but ALSPA and/or its agents failed in some instances and in others refused to make proper repairs.

13

Civil Action No.
Magistrate Judge

60.    The attempted limitations in the ALSPA's express warranty are unenforceable as the warranty is a "full" warranty as defined under 15 U.S.C. §2301, §2303, and §2304.

61.    JOHNSON has retained the undersigned counsel and has agreed to pay the same reasonable attorneys' fees and costs. JOHNSON has incurred reasonable attorneys' fees and costs in connection with his representation herewith, for which he makes demand pursuant to 15 U.S.C., §2310(d), as further pled in this Complaint.

**WHEREFORE**, Plaintiff demands judgment for compensatory damages, interest, costs and attorney fees against Defendant LAMBORGHINI SpA.

## COUNT 5

### VIOLATION OF FLORIDA STATUTE §501.201 et seq. - FLORIDA DECEPTIVE and UNFAIR TRADE PRACTICES ACT AGAINST LAMBORGHINI SpA

62.    JOHNSON adopts and realleges the allegations contained in paragraphs 1-61 as though fully set forth herein.

63.    The actions and conduct of ALSPA as herein described, constitute unfair methods of competition, unconscionable acts and/or practices, and unfair and deceptive acts and/or practices.

64.    The actions and conduct of ALSPA occurred in the course of trade and commerce, in violation of § 501.204, Fla. Stat. (1997).

65.    JOHNSON has suffered damages as a result of the deceptive and unfair trade practices of ALSPA.

**WHEREFORE**, Plaintiff demands judgment against Defendant LAMBORGHINI SpA for

14

Civil Action No.
Magistrate Judge

all damages available including punitive damages, attorney's fees and costs pursuant to §501.211(2).

## COUNT 6

### FRAUD IN THE INDUCEMENT LAMBORGHINI SpA

66.    JOHNSON hereby adopts and realleges the allegations set forth in paragraphs 1-65 as though fully set forth herein.

67.    ALSPA's written representation that the Diablo is properly used as a daily driving car was a material representation. which it knew to be a material misrepresentation.

68.    As a result of ALSPA's false material written misrepresentation. JOHNSON purchased the Diablo.   JOHNSON justifiably relied upon ALSPA's false written material misrepresentation.

69.    ALSPA made this written misrepresentation for the purpose of inducing JOHNSON to purchase a Diablo, and it knew that JOHNSON would not purchase a Diablo without such material misrepresentation being made.

70.    ALSPA's failure to advise JOHNSON of the multitude of design and manufacturing defects from which the Diablo suffers is also a material misrepresentation (by omission), which was also made to induce JOHNSON to purchase the Diablo.  Had JOHNSON been advised of these defects. he would not have purchased the Diablo.

71.    JOHNSON has suffered damages as a result of these fraudulent misrepresentations of ALSPA.

**WHEREFORE**, Plaintiff demands judgment against the Defendant LAMBORGHINI SpA for all damages available including punitive damages, attorney's fees and costs.

15

Civil Action No.
Magistrate Judge

## COUNT 7

### NEGLIGENT MISREPRESENTATION LAMBORGHINI SpA

72.     The Plaintiff hereby readopts and realleges the allegations set forth in paragraphs 1-71 as though fully set forth herein.

73.     ALSPA's written and oral representation that the Diablo is properly used as a daily driving car is a material representation which, it knew at the time of its presentation to be false, or which it made without knowledge as to its truth or falsity, or which it made under circumstances in which it ought to have known of its falsity.

74.     Based on ALSPA's false material misrepresentation JOHNSON did in fact purchase the Diablo.

75.     JOHNSON justifiably relied upon ALSPA's false material misrepresentation.

76.     ALSPA made this false written and oral misrepresentation for the purpose of inducing JOHNSON to purchase the Diablo.

77.     ALSPA knew that JOHNSON would not have purchased the Diablo but for ALSPA's false material misrepresentation that the Diablo was a daily driving vehicle.

78.     ALSPA's failure to inform JOHNSON of the multitude of design and manufacturing defects from which the Diablo suffers is also a false material misrepresentation (by omission), made to induce JOHNSON to purchase the Diablo.

79.     Had JOHNSON been advised of these defects, he would not have purchased the Diablo.

80.     JOHNSON has suffered damages as a result of ALSPA's false negligent material

16

Civil Action No.
Magistrate Judge

misrepresentations.

**WHEREFORE**, Plaintiff demands judgment for compensatory damages, interest, costs and attorney fees against the Defendant LAMBORGHINI SpA.

## COUNT 8

### REVOCATION OF ACCEPTANCE AGAINST LAMBORGHINI SpA

81.     JOHNSON hereby readopts and realleges the allegations set forth in paragraphs 1-81 as though fully set forth herein and would further show that this is an action for revocation of acceptance pursuant to §672.608, Florida Statutes.

82.     JOHNSON timely revoked his acceptance of the vehicle due to the nonconformity substantially impairing its value to him as aforepled.

83.     JOHNSON accepted the vehicle without discovery of the nonconformity, which acceptance was reasonably induced by the difficulty of discovery before acceptance and by the seller's assurances.

84.     JOHNSON's Notice of Revocation occurred within a reasonable time after the buyer discovered the grounds for it and before any substantial change in the condition of the vehicle which was not caused by its own defects.

85.     JOHNSON maintains a possessory security interest in the vehicle pursuant to Florida Statutes Ch. 672.711(3) for his charges incurred to the point of revocation.

86.     As a direct and proximate result of the Defendant ALSPA's breach, JOHNSON demands the return of his purchase price including tax, tag and title and any loss resulting in the

17

Civil Action No.
Magistrate Judge

ordinary course of events from the defects, including but not limited to incidental damages consisting of those expenses reasonably incurred in inspection, receipt, transportation, and care and custody of the vehicle, and his expenses and commissions in connection with effecting cover, and further consequential damages including his loss of insurance, maintenance costs, repair costs, insurance costs, storage and other maintenance costs.

87.     JOHNSON has retained the undersigned counsel and agreed to pay the same reasonable attorneys' fees and costs. JOHNSON has incurred reasonable attorneys' fees and costs in connection with his representation herewith, for which he makes demand pursuant to 15 U.S.C., §§2310(d), as further pled in this Complaint.

**WHEREFORE**, Plaintiff demands judgment for revocation of acceptance and for the Court to thereafter award the Plaintiff compensatory damages including, but not limited to the purchase price of the vehicle, tax, tag and title, interest on the payments on the vehicle and those costs, fees, expenses and monies as aforepled. Upon entry of a Judgment for revocation and payment of the damages, the Plaintiff will tender all right, title and ownership interest in the vehicle to the Defendant.

**COUNT 9**

**FRAUD BY MICHAEL KIMBERLY, ALSPA DIRECTOR**

88.     JOHNSON adopts and realleges paragraphs 1-87 as fully set forth herein and states that this is a cause of action for fraud against Michael Kimberly, an ALSPA Director.

89.     From the time of inspection and road testing of the Diablo prototype, a multitude of mechanical problems such as the water leakage into the Diablo through the driver and passenger side

18

Civil Action No.
Magistrate Judge

windows, and other engineering defects were known to the engineering department, executive

management and other related staff.

90.    Michael Kimberly, is and was at all times material hereto part of the executive

management.

91.    Michael Kimberly was aware prior to the Diablo's introduction into the stream of

commerce of all of the Diablo's mechanical problems.

92.    Specifically, Mr. Kimberly was aware of the severe leaking that occurred in the

Diablo when the car was driven in the rain due to the flooding through both the driver and passenger

side windows. Kimberly was aware that the side molding or roof, were defective and that the water

would enter through these areas.

93.    Kimberly attended a meeting at the factory at Sant' Agata, Italy at which other

Lamborghini executives were present.

94.    During said meeting Paul Bianchi, the former executive director of Lamborghini

USA, Inc. explained to Kimberly and the other officers and directors that there was a severe leaking

problem with the Diablo and that the same should be corrected immediately.

95.    Kimberly, after attending this meeting and knowing of the severe design defects in

the Diablo which caused the leaking as well as other problems, allowed the Diablo to be put into the

stream of commerce and made available for sale throughout these United States.

96.    Upon information and belief, when asked about the design defects, Kimberly denied

that defects existed and confirmed that the Diablo was in fact a daily driving car.

97.    Kimberly's refusal to stop the introduction of the Diablo into the stream of commerce

19

Civil Action No.
Magistrate Judge

within these United States, was the direct and proximate cause of JOHNSON's injuries, which he sustained upon purchasing the Diablo as a daily driving vehicle.

98.     But for Kimberly's allowing the defective Diablo into the stream of commerce in these United States, JOHNSON would not have suffered injuries.

99.     Kimberly has committed a fraud upon JOHNSON and as such, JOHNSON has suffered damages.

WHEREFORE, JOHNSON demands judgment for the fraud by Michael Kimberly for compensatory damages and punitive damages, and for any other relief the Court deems just and proper.

## COUNT 10

### FRAUD BY JON DOE I, JON DOE II AND JON DOE III

100.     JOHNSON adopts and realleges paragraphs 1-99 as fully set forth herein and states that this is a cause of action for fraud against Jon Doe I, Jon Doe II and Jon Doe III.

101.     From the time of inspection and road testing of the Diablo prototype, a multitude of mechanical problems such as the water leakage into the Diablo through the driver and passenger side windows, and other engineering defects were known to the engineering department, executive management and other related staff.

102.     Jon Doe I, Jon Doe II and Jon Doe III are and were at all times material hereto part of the executive management.

103.     Jon Doe I, Jon Doe II and Jon Doe III were aware prior to the Diablo's introduction into the stream of commerce of all of the Diablo's mechanical problems.

20

Civil Action No.
Magistrate Judge

104.    Specifically, Jon Doe I, Jon Doe II and Jon Doe III were aware of the severe leaking that occurred in the Diablo when the car was driven in the rain due to the flooding through both the driver and passenger side windows. Jon Doe I, Jon Doe II and Jon Doe III were aware that the side molding or roof, were defective and that the water would enter through these areas.

105.    Jon Doe I, Jon Doe II and Jon Doe III attended a meeting at the factory at Sant' Agata, Italy at which other Lamborghini executives were present.

106.    During said meeting Paul Bianchi, the former executive director of Lamborghini USA, Inc. explained to Jon Doe I, Jon Doe II and Jon Doe III and the other officers and directors that there was a severe leaking problem with the Diablo and that the same should be corrected immediately.

107.    Jon Doe I, Jon Doe II and Jon Doe III after attending this meeting and knowing of the severe design defects in the Diablo which caused the leaking as well as other problems, allowed the Diablo to be put into the stream of commerce and made available for sale throughout these United States.

108.    Upon information and belief, when asked about the design defects, Jon Doe I, Jon Doe II and Jon Doe III denied that defects existed and confirmed that the Diablo was in fact a daily driving car.

109.    Jon Doe I, Jon Doe II and Jon Doe III's refusal to stop the introduction of the Diablo into the stream of commerce within these United States, was the direct and proximate cause of JOHNSON's injuries, which he sustained upon purchasing the Diablo as a daily driving vehicle.

110.    But for Jon Doe I, Jon Doe II and Jon Doe III's allowing the defective Diablo into the

21

Civil Action No.
Magistrate Judge

stream of commerce in these United States, JOHNSON would not have suffered injuries.

111.    Jon Doe I, Jon Doe II and Jon Doe III have committed a fraud upon JOHNSON and as such, JOHNSON has suffered damages.

WHEREFORE, JOHNSON demands judgment for the fraud by Jon Doe I, Jon Doe II and Jon Doe III for compensatory damages and punitive damages, and for any other relief the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable.

Dated _2 - 8 - 00_

BRINKLEY, McNERNEY, MORGAN
SOLOMON & TATUM, LLP
Attorneys at Law
Sun-Sentinel Building
200 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, Florida 33301-2209
(954) 522-2200
Attorneys for Plaintiff

By: _____

HARRIS K. SOLOMON
Florida Bar No. 259411

22

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

00-6202 civ-LENARD

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I.(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Karel G. Johnson and Lise H. Johnson | Automobili Lamborghini SpA, Michael Kimberly, Jon Doe I, Jon Doe II, and Jon Doe III, individually, |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _PALM BEACH_
(EXCEPT IN U.S. PLAINTIFF CASES)

A NORTH - 0:00 - LENARD/SCT.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
Harris K. Solomon, Esq., BRINKLEY, MCNERNEY
MORGAN, SOLOMON & TATUM, LLP, 200 East Las
Olas Blvd, Ste 1800, Fort Lauderdale, FL 33301

ATTORNEYS (IF KNOWN)

MAGISTRATE JUDGE
TURNOFF

CIRCLE COUNTY WHERE ACTION AROSE:  DADE,  MONROE,  (BROWARD)  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE HIGHLANDS

| II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY) | III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF (For Diversity Cases Only) AND ONE BOX FOR DEFENDANT |
|---|---|

| | | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

| IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY) | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | Transferred from ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☒ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | **B SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | B☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS – Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | A OR B |
| | | B☐ 555 Prison Condition | | | |

VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

_15 USC § 2310 (d) - Defective automobile_

LENGTH OF TRIAL via _7_ days estimated (for both sides to try entire case)

| VII. REQUESTED IN COMPLAINT: | CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23 | DEMAND $ _75000+_ | CHECK YES only if demanded in complaint: JURY DEMAND: ☒ YES  ☐ NO |
|---|---|---|---|

VIII. RELATED CASE(S) (See instructions):
IF ANY    JUDGE _Dimitrouleas_    DOCKET NUMBER _98-6621-Civ_

DATE _2-8-2000_    SIGNATURE OF ATTORNEY OF RECORD _[signature]_

FOR OFFICE USE ONLY

RECEIPT # _518540_    AMOUNT _$150.00_    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____