FILED by _____ D.C.

JUL 1 7 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
*Dimitrouleas*

CASE NO.  00-6202-CIV-~~(LENARD)~~/Magistrate Judge (TURNOFF)

KAREL G. JOHNSON, and
LISE H. JOHNSON, his wife,

    Plaintiff(s),

vs.

                       NON-COMPLIANCE OF S.D. Fla.LR 5.1b

AUTOMOBILI LAMBORGHINI SpA,
MICHAEL KIMBERLY, JON DOE I,
JON DOE II, and JON DOE III, Individually,

Defendant(s).

_____/

## DEFENDANT, LAMBORGHINI's MOTION TO DISMISS AND/OR STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT

DEFENDANT, AUTOMOBILI LAMBORGHINI, SpA ("Lamborghini"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 4(m), 12(b) and 12(f) files it's Motion to Dismiss and/or Strike Portions of Plaintiffs' Complaint and, in support thereof, states as follows:

1.      Plaintiffs KAREL G. JOHNSON and LISE H. JOHNSON (collectively "JOHNSON") are residents of St. Johns County, Florida.

2.      Defendant, Lamborghini, is a foreign corporation with its principal place of business in Sant'Agata Bolagnese Italy.



**Lack of Personal Jurisdiction/Failure of Service**

3.    On or about February 8, 2000, JOHNSON, filed the Complaint in the instant action.

4.    On or about June 7, 2000 the requisite 120-day period for service of the Complaint, as prescribed by F.R.Civ.P. 4(m), expired.  Plaintiff failed to request an extension of time from this Court within which to serve the Complaint upon Defendant, Lamborghini.

5.    On June 16, 2000, the Complaint was served upon Defendant, Lamborghini, in Sant'Agata Bolagnese Italy–nine days past the requisite 120-day period. *See* Exhibit "A" attached hereto evidencing service on June 16, 2000 and Exhibit "A1", the attached English translation.

6.    Since Plaintiff failed to serve Lamborghini within the time prescribed by F.R.Civ.P. 4(m), proper service was not effectuated and this Court does not have personal jurisdiction over Lamborghini and this action must be dismissed.

**Failure of Conditions Precedent - Lack of Ripeness**

7.    Counts 1, 2, 3, 4, 5 and 8 must be dismissed for the Johnsons' failure to comply with Florida Statute §681.1095(4) as a condition precedent to the filing of the instant action.[1]

---

[1]Defendant, Lamborghini, makes no reference to counts 9 and 10 of Plaintiffs' Complaint as those counts are directed against Defendant, Michael Kimberly, and Defendants, Jon Doe I, II and III, respectively.

8.     Counts 1-5 and 8 raise matters that are subject to Fla.Stat. §681.104, and as such, the Johnsons must submit these matters to the Florida Division of Consumer Services of the Department of Agricultural and Consumer Services prior to filing a civil action.

9.     Because, the Johnsons failed to submit these matters to the Florida Division of Consumer Services of the Department of Agricultural and Consumer Services prior to filing their Complaint, this Court must dismiss the above referenced counts for lack of ripeness.

## Immaterial, Impertinent and Scandalous Allegations Must be Stricken

10.     Paragraphs 9 (c), 9 (d), 9 (f), 9 (h), 9 (l), 21 (w) and 21 (x) of the Johnsons' Complaint must be stricken for Plaintiffs' inclusion of immaterial, impertinent and scandalous allegations.

11.     Federal Rule of Civil Procedure 12(f) mandates the striking of paragraphs 9 (c), 9 (d), 9 (f), 9 (h), and 9 (l) for the following reasons:

(a)     Paragraph 9 (c) which states "Defective Diablo paint jobs resulting in paint bubbles, which ALSPA frequently re-painted without advising the ultimate purchaser (at a cost of over $500.00 per re-painting);" is immaterial, impertinent and scandalous. The Johnsons' concede neither they nor their vehicle suffered or experienced this "problem."

(b)     Paragraph 9 (d) which states "Defective Diablo batteries which frequently go dead without warning and which are not covered by warranty;" is immaterial,

impertinent and scandalous. The Johnsons concede <u>neither they nor their vehicle</u> suffered or experienced this "problem."

(c)    Paragraph 9 (f) which states "The Diablo passenger and driver electric windows frequently jam and will not open, trapping the occupants inside the Diablo;" is immaterial, impertinent and scandalous. The Johnsons concede <u>neither they nor their vehicle</u> suffered or experienced this "problem."

(d)    Paragraph 9 (h) which states "Rusting of the Diablo vehicle;" is immaterial, impertinent and scandalous. The Johnsons concede <u>neither they nor their vehicle</u> suffered or experienced this "problem."

(e)    Paragraph 9 (I) which states "Engine smoke and fires causing the Diablo to burn to the ground without warning;" is immaterial, impertinent and highly scandalous. The Johnsons concede <u>neither they nor their vehicle</u> suffered or experienced this "problem."

12.    Federal Rule of Civil Procedure 12(f) mandates the striking of paragraphs 21 (w) and 21 (x) for the following reasons:

(a)    Paragraph 21 (w) states "While operating, the targa roof latches **can** spontaneously release causing a risk of total detachment;" (emphasis added). The Johnsons merely state this "problem" **can** occur, not that it did occur, thereby making this allegation immaterial, impertinent and scandalous.

(b)    Paragraph 21 (x) states "Severe burns **can** result from one attempting to check the oil with the 'dipstick'." (emphasis added).  The Johnsons merely states this "problem" **can** occur, not that it did occur, thereby making this allegation immaterial, impertinent and scandalous.

### MEMORANDUM OF LAW

In this case, the requisite 120-day period in which to effectuate service of process should be strictly enforced.  Plaintiffs had the benefit of the full 120-day period provided by F.R.Civ.P. 4(m) within which to serve the Complaint upon Lamborghini, but failed to do so.  Additionally, Plaintiff failed to apply to this Court and represent the requisite good cause and excusable neglect for serving a Complaint beyond the 120-period.  As such, the defective service effectuated upon Lamborghini cannot stand; otherwise, Plaintiffs would be rewarded for their failure to file a motion for an extension of time to serve the Complaint.

Rule 4 "applies equally to defendants who were never served and defendants who were served after the 120-day period has lapsed." *See Geiger v. Allen*, 850 F.2d 330 (7th Cir. 1998); *In re Cooper*, 971 F.2d 640 (11th Cir. 1992); *Sanders v. Marshall*, 100 F.R.D. 480 (D.C.Pa. 1984).  In *Geiger* the Seventh Circuit Court of Appeals reviewed a lower court's dismissal of an action for failure to serve the defendant within 120 days of filing the complaint.  Plaintiff argued on appeal that F.R.Civ.P. 4 did not apply to the action because the defendant was actually served with process, albeit beyond the 120-

period. In rejecting this argument and upholding the dismissal of plaintiff's action, the *Geiger* Court stated "[l]ater service or later knowledge by the defendant is irrelevant" as the 120-day service period mandated by Rule 4 applies equally to both defendants who were never served and those who were. *Id.* at 332.

Assuming, *arguendo*, Plaintiffs' Complaint is not dismissed *in toto* for failure to effectuate service within the requisite 120-day period, portions of the Complaint are subject to dismissal for other grounds.

## Failure of Conditions Precedent

It is well settled under Florida law that "[before filing a civil action on a matter subject to s. 681.104, the consumer **must** first submit the dispute to the division [of Consumer Services], and the board if such dispute is deemed eligible for arbitration." *See* Fla. Stat. §681.1095. As Plaintiffs have clearly failed to satisfy this condition precedent, the Complaint must be dismissed.

Here, Plaintiffs attempt to bring a cause of action sounding in the following Breach of Implied Warranty of Fitness for a Particular Purpose (Count I); Breach of Implied Warranty of Merchantability (Count II); Breach of Express Warranty; (Count III); Violation of Magnuson-Moss Consumer Protection Act (Count IV); Deceptive and Unfair Trade Practices Act; (Count V); and Revocation of Acceptance (Count VIII). The subject matter of all of the preceding counts falls squarely within the confines of Fla. Stat. § 681.104, entitled nonconformity of motor vehicles. In Counts 1-5 and 8,

-6-

Plaintiffs repeat and reallege <u>every</u> paragraph of the complaint which precedes the respective count.  A close reading of these allegations reveal that Plaintiffs' entire complaint is based upon the alleged nonconformity of the Diablo Roadster.  Accordingly, since counts 1-5 and 8 of Plaintiffs' Complaint utterly fail to cite any subject matter which is outside the scope of Fla. Stat. § 681.104, the Complaint must be dismissed.  By failing to strictly comply with the condition precedent substantively set forth in Fla. Stat. §681.1095, Plaintiffs have presented a dispute to this Court which is not yet ripe.

Florida  Statute §681.1095 serves an important purpose in that both manufacturers and consumers rely upon the dispute process provided for therein.  Plaintiffs must not be allowed to circumvent the clear legislative intent of this statutory scheme; despite Plaintiffs' creative attempt to do so, this Court is bound to apply the substantive law of Florida, including the condition precedent requirement of Fla. Stat. §681.1095.

**Immaterial, Impertinent and Scandalous Allegations Must be Stricken**

Assuming, *arguendo*, Plaintiffs' Complaint is not dismissed for the above stated reasons, paragraphs 9 (c), 9 (d), 9 (f), 9 (h), 9 (l), 21 (w) and 21 (x) of Johnson's Complaint must be stricken based upon inclusion of immaterial, impertinent and scandalous allegations.

Federal Rule of Civil Procedure 12(f) provides ". . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Here, Plaintiffs have subjected themselves to the draconian remedy

this Rule provides by injecting matter into their Complaint which is immaterial, impertinent and scandalous. Florida's federal court's have long recognized, "[a] motion to strike under Rule 12(f) is the appropriate remedy for the elimination of redundant, immaterial, impertinent, or slanderous matters in any pleading." *See Brown v. Seebach*, 763 F.Supp 574, 582 (S.D.Fla. 1991); *See also, Augustus v. Board of Public Instruction of Escambia County, Florida*, 306 F.2d 862 (5th Cir. 1962) (a motion to strike should be granted when pleading to be stricken has no possible relation to controversy).

Here, it is apparent form the face of the pleadings, paragraphs 9 (c), 9 (d), 9 (f), 9 (h), and 9 (I) of Plaintiff's Complaint have no possible relation to this controversy. In their Complaint, Plaintiffs <u>concede</u> neither they nor their vehicle suffered or experienced any of the "problems" set forth in these paragraphs. No further inquiry need be made; Plaintiffs have raised immaterial subject matter which must be stricken. Notwithstanding this fact, and moving beyond the immateriality of these allegations, Plaintiffs have placed into the public record baseless and scandalous allegations such as the allegation that the Diablo Roadster burns to the ground without warning. The sheer scandalous nature of these allegations-which Plaintiffs freely admit <u>never occurred</u>-warrants the severe remedy provided by F.R.Civ.P. 12(f).

Likewise, Federal Rule of Civil Procedure 12(f) mandates the striking of paragraphs 21 (w) and 21 (x) of Plaintiffs' Complaint. In these paragraphs, Plaintiffs allege that certain events "can" occur. Because there is no allegation these events did in

fact occur and the sheer speculative nature of such allegations, these paragraphs must be stricken.

WHEREFORE, DEFENDANT, AUTOMOBILI LAMBORGHINI SpA, respectfully requests this Court enter an Order Dismissing PLAINTIFF JOHNSON's Complaint or, in the alternative, striking certain portions thereof.

**HERZFELD & RUBIN**
Attorneys for Defendant
Automobili Lamborghini SpA
Brickell Bayview Centre
80 SW 8th Street
Suite 1920
Miami, Florida 33130
Telephone:   (305) 381-7999
Facsimile:   (305) 381-8203

MYRON SHAPIRO
Fla. Bar No. 399205
MICHAEL J. SCAGLIONE
Fla. Bar No. 174970

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was deposited in the U.S. Mail this 14th day of July, 2000, to HARRIS K. SOLOMON, ESQ., Brinkley, McNerney, Morgan, Solomon & Tatum, LLP, attorneys for Plaintiff, 200 East Las Olas Boulevard, Suite 1800, Fort Lauderdale, Florida, 33301-2209.

**HERZFELD & RUBIN**
Attorneys for Defendant
Automobili Lamborghini SpA
Brickell Bayview Centre
80 SW 8th Street
Suite 1920
Miami, Florida 33130
Telephone: (305) 381-7999
Facsimile: (305) 381-8203

MYRON SHAPIRO
Fla. Bar No. 399205
MICHAEL J. SCAGLIONE
Fla. Bar No. 174970

H:\WP\DATA\MJS\Lamborghini\Motion2Dismiss.wpd

-10-

Io sottoscritto Assistente U.N.E.P. addetto alla Corte d'Appello
di Bologna ho notificato il presente atto al sig.
Ambrosini _____ S.P.A.
residente in _____
ivi consegnandone copia a mani _____

S.Agate Bolgum  16/6/1000

Assistente U.N.E.P.
Corte d'Appello di Bologna
Calabrese Salvatore



EXHIBIT

"A"

TRANSLATION:

I, the undersigned, *UNEP's Assistant in charge of the Court of Appeal of Bologna, have served this act to (Mr) AUTOMOBILI LAMBORGHINI SPA registered in Via Modena 12, Sant'Agata Bolognese by handing over a copy to their employee, Mr. Ferrino Zagnoni, responsible for notifications.

Sant'Agata Bolognese 16/6/00

UNEP's Assistant
Court of Appeal of Bologna
Calabrese Salvatore

* = Court Notifications Department

EXHIBIT

"A-1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.  00-6202-CIV-(LENARD)/Magistrate Judge (TURNOFF)

KAREL G. JOHNSON, and
LISE H. JOHNSON, his wife,

     Plaintiff(s),

vs.

AUTOMOBILI LAMBORGHINI SpA,
MICHAEL KIMBERLY, JON DOE I,
JON DOE II, and JON DOE III, Individually,

Defendant(s).
_____/

## ORDER ON DEFENDANT, LAMBORGHINI's MOTION TO DISMISS AND/OR STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT

**THIS  CAUSE**  having  come  before  the  Court  on  Defendant,  Automobili Lamborghini,  SpA's  ("Lamborghini"),  Motion  to  Dismiss  and/or  Strike  portions  of Plaintiff Johnson's Complaint, the Court having reviewed the file, and being otherwise duly advised in the premises, it is thereupon

**ORDERED and ADJUDGED** as follows:

1.     Defendant, Lamborghini's Motion to Dismiss, is **GRANTED.**

2.     Defendant, Lamborghini's Motion to Strike, is **DISMISSED** as moot.

3.     Plaintiff Johnson's Complaint is hereby dismissed without prejudice.

**DONE and ORDERED** in Chambers in Miami, Florida this _____ day of

_____, 2000.


_____
JOAN A. LENARD
United States District Court Judge

Copies furnished to:
Myron Shaprio, Esq.
Harris K. Solomon, Esq.

H:\WP\DATA\MJS\Lamborghini\OrderonMTD.wpd

-2-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 00-6202-CIV-(LENARD)/Magistrate Judge (TURNOFF)

KAREL G. JOHNSON, and
LISE H. JOHNSON, his wife,

      Plaintiff(s),

vs.

AUTOMOBILI LAMBORGHINI SpA,
MICHAEL KIMBERLY, JON DOE I,
JON DOE II, and JON DOE III, Individually,

Defendant(s).
_____/

## ORDER ON DEFENDANT, LAMBORGHINI's MOTION TO DISMISS AND/OR STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT

**THIS CAUSE** having come before the Court on Defendant, Automobili Lamborghini, SpA's ("Lamborghini"), Motion to Dismiss and/or Strike portions of Plaintiff Johnson's Complaint, the Court having reviewed the file, and being otherwise duly advised in the premises, it is thereupon

**ORDERED and ADJUDGED** as follows:

1.     Defendant, Lamborghini's Motion to Dismiss, is **DENIED.**

2.     Defendant, Lamborghini's Motion to Strike, is **GRANTED.**

3.      Paragraphs 9 (c), 9 (d), 9 (f), 9 (h), 9 (I), 21 (w) and 21 (x) of Plaintiff,

Johnson's Complaint are hereby stricken for Plaintiff's inclusion of immaterial,

impertinent and scandalous allegations.

**DONE and ORDERED** in Chambers in Miami, Florida this _____ day of

_____, 1999.


                                        _____
                                        JOAN A. LENARD
                                        United States District Court Judge

Copies furnished to:
Myron Shaprio, Esq.
Harris K. Solomon, Esq.

H:\WP\DATA\MJS\Lamborghini\OrderonMTS.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.  98-6621-CIV-DIMITROULEAS/JOHNSON

JOHN MARTIN,

      Plaintiff,

vs.

AUTOMOBILI LAMBORGHINI
EXCLUSIVE, INC.; AUTOMOBILI
LAMBORGHINI USA, INC.; and
AUTOMOBILI LAMBORGHINI, SpA,

      Defendants.

_____/



FILED by _____ D.C.

JAN 3 1 2000

CLERK U.S. DIST. CT.
S.D. OF FLA - W.P.B.

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on Defendant AUTOMOBILI LAMBORGHINI USA,

INC.'s ("ALUSA") Motion to Enforce Rule 11(a) as to Plaintiff (D.E. 128) and Motion to Dismiss

for Fraud Upon the Court and for Sanctions (D.E. 164), and Plaintiff JOHN MARTIN's Motion

for Sanctions Against ALUSA, ALSPA, Winthrop, Stimson, Putnam & Roberts and Mullin &

Galloway, P.A., Pursuant to 28 U.S.C. §1927 and the Court's Inherent Power to Sanction (D.E.

404).  These Matters have been referred to the undersigned United States Magistrate Judge

by the Honorable William P. Dimitrouleas (D.E. 206, 208) and are now ripe for judicial review.

The undersigned has carefully reviewed the pleadings filed incident to these matters and is

otherwise fully advised in the premises.  The Court has presided over five (5) hearings on

Defendant's Motions, which hearings are the subject of Plaintiff's Motion for Sanctions.

      Based upon the specific findings set forth below, the undersigned concludes that the



present action does indeed constitute a Fraud upon this Court and Recommends that the United States District Court issue Sanctions, including, but not limited to, Dismissal of the subject Action with Prejudice.

## BACKGROUND

It is impossible to view this lawsuit in a vacuum. Rather, this case must properly be considered within the context of multiple lawsuits filed in this district in which Brian Neiman, paralegal, has played a pivotal role.[1] Brian Neiman's conduct in this case, as in the others, has constitutes a flagrant abuse of the judicial machinery and is a mockery of the judicial system. The particular facts of this case are briefly outlined below.

In 1996, Brian Neiman, sole shareholder of Brian Neiman, Inc., purchased a 355 Ferrari and titled it in the name of Plaintiff, John Martin. Mr. Neiman soon became dissatisfied with the Ferrari. After an interchange with the Ferrari dealership, the Ferrari dealer replaced the 355 Ferrari with a brand new one. Mr. Neiman had the new Ferrari towed directly to Prestige Imports, Inc., where he traded the brand new Ferrari and a $145,000 cashiers' check from his personal Merrill Lynch CMA account (the "CMA Account") for a 1997 Lamborghini Diablo Roadster (the "Lamborghini"). See D.E. 400 at 7; D.E. 401 at 3. Prior to purchasing the Lamborghini, Mr. Neiman sought a written statement from a Lamborghini representative that the automobile was a dependable, everyday driving car. D.E. 401 at 3.

In April of 1997, one month after the Lamborghini was purchased, attorney Saul Smolar

---

[1]/ See, e.g., Linda Adams v. Bell South, S.D. Fla. Case No. 96-24730-CIV-MIDDLEBROOKS, Williams v. Eastman Kodak Company, S.D. Fla., Case No. 97-6672-CIV-MOORE, Barnett v. Doctors & Associates, Inc., S.D. Fla., Case No. 95-6837-CIV-RYSKAMP, Zarate v. CBS Broadcasting, Inc., S.D. Fla., Case No. 98-1895-CIV-MORENO, Hudson v. Ocean Spray Cranberry, S.D. Fla., Case No. 98-6603-CIV-SEITZ, Ingram v. SunTrust Bank South Florida, N.A., Case No. 98-7023-CIV-HURLEY.

began working out of Mr. Neiman's home. See D.E. 401 at 4.[2]/ Although Plaintiff's Complaint was filed in Mr. Smolar's name, Mr. Smolar's signature was actually forged by Brian Neiman. See, e.g., D.E. 401 at 7-8. The allegations in the Complaint stem from the Lamborghini that Mr. Neiman purchased, and from the statements about the Lamborghini's dependability made by Lamborghini's representatives at the time the Lamborghini was purchased. However, the Complaint makes absolutely no mention of Brian Neiman or Brian Neiman, Inc.. See D.E. 1. Instead, the Complaint states that "Martin purchased a Diablo from Prestige in Miami, Florida." D.E. 1 at 6. It further details the alleged defects of the car that have prevented "Martin" from the enjoyment of "his" Lamborghini Diablo. As will discussed *infra*, the undersigned finds that, although the Lamborghini is titled and insured in Plaintiff's name, the beneficial owner is, in fact, Brian Neiman, the instigator of this lawsuit and the person who forged attorney Saul Smolar's signature onto the Complaint, among many other papers filed in this Court.

The Court notes that whether Plaintiff, as bare titleholder to the Lamborghini, may have independent standing to bring this suit is a separate matter. Plaintiff has intentionally misrepresented to this Court that he, in fact, is the beneficial owner and has obstructed discovery to protect the validity of this assertion. As discussed, infra, the Court rejects Plaintiff's contention that, as with the aforementioned forged signatures, Plaintiff should be

---

[2]/ At that time, Mr. Smolar began working with attorney Norman Ganz, who also worked out of Mr. Neiman's home. D.E. 401 at 4. Prior to the present suit, Mr. Ganz, with the aid of Mr. Neiman, represented former employees of ALUSA, including ALUSA's former president, and the president's administrative assistant in two separate employment suits against ALUSA that were settled out of Court. Through these representations, Mr. Ganz, with Mr. Neiman as his paralegal, received sensitive information about ALUSA. In view of this, as a condition to the second settlement, Mr. Ganz allegedly agreed not to represent any other parties in claims against Lamborghini. See D.E. 401 at 4. As will be shown, Mr. Neiman has taken great steps to shield his active involvement in the present litigation against Lamborghini.

Scanned Image - 0:96CV6621 Document 432 page 3 Mon Feb 21 09:44:24 2000

allowed to fraudulently deceive this Court and the opposing parties, and then be allowed to merely patch up the defects in his case when his deception comes to light. This vexatious tactic drains judicial resources as well as those of opposing parties, who must expend their energies uncovering Plaintiff's deception.

As will be further demonstrated herein, the outrageous conduct by Plaintiff and his cohorts did not end with misleading the Court as to the real party in interest and forging signatures onto pleadings and other Court documents. At least as early as June of 1997, a mere three months after Neiman purchased the Lamborghini, Plaintiff began collecting affidavits of former Lamborghini employees in preparation of a lawsuit against Defendants, suggesting that the Lamborghini was not purchased in good faith.[3]/ Moreover, in June and July of 1998, Plaintiff's attorney, Saul Smolar, sent letters, on behalf of Plaintiff, to ALUSA's attorneys, threatening to file a $15 million class action, to interfere with a corporate takeover, and to attract media attention to the Lamborghini's alleged defects if the Defendants failed to settle for $1.5 million. Although Defendants did not accede to Mr. Smolar's demands, Mr. Smolar has not since filed a class action lawsuit against Defendants on behalf of his alleged clients.

Whereas Mr. Neiman, Neiman, Inc. and Plaintiff might have instituted a forthright Complaint, and conducted a proper lawsuit, the evidence shows that they colluded to hide the truth and to promulgate deception at every turn. The totality of the spurious acts outlined above, along with the dogged efforts by Plaintiff and his affiliates to shield the truth, leads this

---

[3]/ This date estimate is based upon a 6/15/98 letter to Harold Nathan, Esq., from Saul Smolar, Esq., stating that Mr. Smolar had been working on the case "for the past one year." D.E. 164, Ex. 2.

Scanned Image - 0:98CV6421 Document 432 page 4 Mon Feb 21 09:44:28 2000

Court to Recommend that the United States District Court Dismiss this Action With Prejudice as a Fraud on the Court.

## I. PROCEDURAL HISTORY

Plaintiff commenced this Action on June 15, 1998. D.E. 1. As stated above, the Complaint concerns an allegedly defective 1997 Lamborghini Diablo Roadster automobile. Although the Complaint was filed under the name of attorney Saul Smolar, Mr. Smolar did not, in fact, sign his name to the pleading. Rather, Mr. Smolar's signature was forged by his paralegal, Brian Neiman, without disclosure to the Court. D.E. 181 at 69.[4]

The Complaint, which never mentions Brian Neiman or Brian Neiman, Inc., alleges, *inter alia*, that Plaintiff directly received oral and written representations from Defendants that induced Plaintiff to purchase the Lamborghini. D.E. 1 at 6-7. The Complaint further alleges that Plaintiff incurred considerable damages as a result of the Lamborghini's alleged defects, such as the difference in value of the Lamborghini from that represented, maintenance costs, repair costs, insurance costs, storage costs, etc.

Defendant ALUSA served its Answer (D.E. 8) and Amended Answer (D.E. 12) and asserted, among its defenses, that the action had not been brought by the real party in interest, as did Defendant Automobili Lamborghini, SpA ("ALSPA") (D.E. 209), and Defendant Exclusive, Inc. ("Exclusive") (D.E. 76). Plaintiff's Reply broadly denied all defenses. D.E. 23. In its Rule 11(a) Motion before this Court, ALUSA asserts that 15 "pleadings, motions and other court papers" in this case were signed by Brian Neiman, a non-attorney forging the

---

[4] / As will discussed, *infra*, this practice of forging Mr. Smolar's signature continued throughout the proceedings in this case, even after Mr. Smolar and Mr. Neiman were reprimanded for such practice by another Court in this District in an unrelated case.

signature of attorney Saul Smolar in violation of Rule 11(a). It seeks dismissal, contempt, fees, and sanctions. On leave of Court, that Motion was supplemented to advise that Mr. Neiman had counterfeited Mr. Smolar's signature on 21 discovery requests, objections and responses, thereby violating Rule 26(g). D.E. 139; D.E. 208 at 8.

Defendant ALUSA's Fraud Upon the Court Motion seeks dismissal, contempt fees and sanctions on the grounds that: (1) there had been wholesale imitation of Mr. Smolar's signature by Mr. Neiman to court papers; (2) there had been repeated "blackmail" attempts by Plaintiff in making unfounded class action threats; (3) Plaintiff and Mr. Neiman had engaged in persistent discovery obstruction to conceal the true purchaser and owner of the Lamborghini; and (4) Plaintiff was not the true, beneficial purchaser and owner of the Lamborghini.

With respect to the beneficial owner issue of ALUSA's Fraud Upon the Court Motion, the United States District Court, in its Order of April 30, 1999 (D.E. 208), concluded that Mr. Neiman has acknowledged an ownership interest in the subject vehicle and that he has signed numerous pleadings filed in the present action. The Court nonetheless determined that numerous factual questions remained on the Motion, including whether Plaintiff had a valid ownership interest in the Lamborghini, and whether Mr. Neiman harassed and threatened the Defendants in violation of Rule 11 of the Federal Rules of Civil Procedure. (D.E. 208 at 6-7).

## II. FINDINGS OF FACT

### A. Class Action Threats

1.  Brian Neiman and Norman Ganz, Esq. have been found in previous cases in this

Scanned Image - 0:98CV6631 Document 432 page 7 Mon Feb 11 09:41:38 2000

District to have acted vexatiously and in bad faith, which conduct included the practice of making threats of class actions (that were never filed) to extort payments from putative defendants. D.E. 8/3-3.

2. In Barnett v. Doctors & Associates, Inc. ("Subway"), the Report and Recommendation of United States Magistrate Judge Vitunac of January 30, 1998 concluded:

The evidence against Mr. Ganz, however, is overwhelming as to bad faith.... Mr. Ganz acted both "unreasonably and vexatiously." See Avirgan, 932 F.2d at 1582. See also, Peterson v. BMI Refractories, 124 F.3d 1386, 1395 (11th Cir. 1997). **He and his paralegal, Mr. Neiman, repeatedly...threatened... Defendants with class actions and actions by the NAACP and EEOC that were never filed. The court finds that these threats were made for the purpose of harassing and intimidating defendants....[A]s Judge Ryskamp observed, the threats against defendants were "nothing but terrorist [acts] threatening all kinds of things if you don't capitulate to my demands. It looks like blackmail...."**

The repeated threats and attempted intimidation...by Mr. Ganz and his paralegal, Mr. Neiman, leave no doubt in this Court's mind that Mr. Ganz acted in bad faith....However, Mr. Ganz and Mr. Neiman went far out of bounds, with repugnant conduct, clearly in bad faith and sanctionable under 28 U.S.C. §1927.

Def. Ex. 8/3-3 at pp. 29-30 (emphasis added; some citations omitted).

3. United States District Judge Ryskamp, in his decision in Subway, rendered May 20, 1998, Adopted the Findings of Fact of Magistrate Judge Vitunac, entered sanctions of approximately $180,000 against Mr. Ganz, ordered Mr. Ganz to attend twenty hours of ethics courses, reported his conduct to the Fort Lauderdale Chapter and the national office of the NAACP, reported the conduct to the Florida Bar Association and recommended formal investigation, and referred the matter to the Grievance Committee of the Southern District of Florida. D.E. 8/3-3.

4. In another case, Linda Adams v. Bell South, S.D. Fla. Case No. 96-2473O, United

Scanned Image - 0:96CV6621 Document 432 page 8 Mon Feb 21 05:44:38 2000

States District Judge Middlebrooks criticized Mr. Neiman's behavior, which included making

false threats of joining the NAACP in the action. Exclusive Ex. 9 at 20.

5.  Mr. Ganz has been Plaintiff's counsel in this case and he worked with Saul Smolar

out of Brian Neiman's home. D.E. 339 (Martin Dep.) Vol. 1, pp. 64-66; D.E. 369 (8/17/99 Tr.)

at 102; Def. Ex. 8/3-2. Letter 11/6/97. The style, address, phone number and almost all

information on the Ganz and Smolar letterheads match. Def. Ex. 8/3-2, 8/3-11. Mr. Ganz was

"of Counsel" to Mr. Smolar. Def. Ex. 8/3-2, 8/3-11. Mr. James Seltzer was "of Counsel" to

both Mr. Ganz and Mr. Smolar. Def. Ex. 8/3-2, 8/3-11. Mr. Neiman was "senior paralegal" to

both Mr. Ganz and Mr. Smolar. Def. Ex. 8/3-2, 8/3-11.[5/]

6.  Pursuant to an affidavit of an auditor for the Florida bar, in 1995, 71% of the gross

revenues of the Law Office of Norman Ganz, P.A. was disbursed to Neiman, Inc. In 1996,

66% of the gross revenues was disbursed to Neiman, Inc. D.E. 164, Ex. 13.

7.  In the present case, Plaintiff dispatched three separate letters to Defendants

threatening class actions. The first, dated November 6, 1997, was sent by James J. Seltzer,[6/]

Def. Ex. 8/3-2, Letter 11/6/97. The letter demanded a settlement of $1.5 million. The letter

stated that, unless the Defendants settled, "I am filing the $10,000,000 class action public

lawsuit in the United States District Court and attaching the supporting documents identified

herein on Monday, December 1, 1997. There will be no extensions." Id.

---

[5/] Mr. Neiman also owned the "law offices" telephones. D.E. 40 at 2.

[6] Although Mr. Seltzer was attorney of record in this action between June 15, 1998 and April 30,
1999 (D.E. 208 at p. 9, ¶14), he was never an admitted member of this District, and never filed a motion
for admittance pro hac vice as required by S.D. Fla. Admis. Rule 4.B. See Archer-Western Contractors,
Ltd. v.D.P.S. Industries, Inc., 1991 WL 254413 (S.D.Fla. 1991) (non-admitted attorney who practices
before the Southern District Court without filing pro hac vice motion may be held in contempt).

8.    On June 15, 1998, just three weeks after Judge Ryskamp's ruling in the Subway case, a second demand letter was sent to Defendants' counsel captioned: "Lawsuit filed [sic] Monday, June 15, 1998 -- Intent to Initiate Class Action Lawsuit." Def. Ex. 8/3-2. Letter 6/15/98. The June 15, 1998 letter was signed by Mr. Neiman in Mr. Smolar's name. Def. Ex. 11/19-6.[7] Mr. Smolar admits that he knew of the Subway decision, in which Judge Ryskamp had previously levied sanctions against his associate, Mr. Ganz, for the exact same conduct. D.E. 397 (11/19/99 Tr.) at 168.

9.    On July 1, 1998, a third demand letter, signed by Mr. Smolar, was sent to Defendants. Def. Ex. 8/3-2. Letter 7/1/98. The July 1, 1998 letter cited to extensive publicity generated by the filing of the case at bar. It specifically referenced a news article that appeared in the Palm Beach Post on June 23, 1998. The letter further stated: "[t]he offers contained in this letter are not negotiable and will remain on the table through Monday, July 6, 1998. I will be filing an Amended Complaint and Motion for Class Certification on Tuesday, July 7, 1998."

10.    Plaintiff personally participated in the creation of the publicity that was part of the attempts to secure a large settlement from Defendants by publicly making false claims that a class action had been filed. Def. Ex. 8/17-6; Pl. Ex. 44.

11.    No class action was ever filed against Defendants by Plaintiff's legal team.

---

7 The letter states as follows: "We have been working on assembling documents and testimony for use in this case for the past one year." Id. at ¶ 3. As noted above, based on this letter, the Court finds that Plaintiff's legal team actively began assembling this lawsuit as of at least mid June 1997, only three months after the Lamborghini was purchased.

## B. Repeated Violations of Federal Rules of Civil Procedure 11(a) and 26(g) [8]/

12. Until the withdrawal of Mr. Smolar on January 8, 1999 (D.E. 122), 49 papers for Plaintiff had been served or filed by "The Law Offices of Saul Smolar." [9]/ Of those, Mr. Neiman has admitted that he signed 36, including the Complaint. [10]/ D.E. 181 at 61, 69. [11]/ The Court finds that in total, over 70% of the court papers from the Law Offices of Saul Smolar were served or filed under a counterfeit signature, over a six-month period. In none of the 36 court papers Mr. Neiman signed was there any disclosure of his signature surrogation for Mr. Smolar. [12]/ Mr. Smolar asserts that the court papers were faxed or read to him over the phone, and that he authorized Mr. Neiman to sign his name. D.E. 181 at 57-58; D.E. 397 (11/19/99 Tr.) at 150.

13. As with the Class Action threats, counterfeit signatures by Mr. Neiman were not limited to this case. Evidence of a widespread pattern has been received by this Court. In

[8] This section is the basis of ALUSA's Rule 11(a) Motion. D.E. 128. Since it was also subsumed within, and a basis for, the Fraud on the Court Motion (D.E. 164), it is discussed here as to both motions concurrently.

[9] Three court papers for Plaintiff had been filed by co-counsel Sachs, Sax & Klein, P.A.

[10] Documents governed by either Rule 11(a) or 26(g) will hereinafter be referred to as "court papers".

[11] Judge Seltzer had rendered an Order to Mr. Neiman and Mr. Smolar to appear on January 28, 1999 and show cause why they should not be required to give handwriting exemplars after the report of the Hart Questioned Document Laboratory established that two different persons were executing Mr. Smolar's signature. D.E. 144. At that hearing the instant admissions were made under oath.

[12] For the United States District Court's ease of reference, a complete Chart of the court papers signed by Mr. Neiman is included as an Appendix to this Report and Recommendation. After reviewing the Record, the Court does not find that the Chart has been admitted into evidence. However, its accuracy has not been contested by Plaintiff.

Ingram v. SunTrust Bank South Florida, N.A., Case No. 98-7023-CIV-HURLEY, Magistrate Frank J. Lynch, Jr. on September 27, 1999 found that Mr. Neiman signed the original Complaint as well as two discovery requests. Finding this conduct to be a violation of Federal Rules 11(a) and 26(g) and S.D. Fla. Gen. Rule 11.1.B, Judge Lynch recommended that both Mr. Neiman and Mr. Smolar be found in contempt of court, that they be fined $10,000 each, and that Mr. Smolar be suspended from practice before this Court for one year.

14. In Zarate v. CBS Broadcasting, Inc., Case No. 98-1895-CIV-MORENO, Mr. Neiman signed a nineteen-page Memorandum of Law that was presented to the Court on December 29, 1998 (Def. Ex. 11/19-1, ¶ 3), even after CBS had filed a Rule 11(a) motion.

15. In Williams v. Eastman Kodak Company, S.D. Fla., Case No. 97-6672-CIV-MOORE, Mr. Neiman signed Mr. Smolar's name on a response memorandum dated August 26, 1998. Def. Ex. 11/19-1, ¶ 4.

16. In Hudson v. Ocean Spray Cranberry, S.D. Fla., Case No. 98-6603-CIV-SEITZ, Mr. Neiman signed Mr. Smolar's name to: (a) the Complaint dated June 10, 1998; (b) the 27-page Amended Complaint, dated June 16, 1998;[13] and (c) a Notice of Filing Supplemental Authority dated October 16, 1998. Def. Ex. 11/19-1, ¶¶ 10, 11, 12.

17. In the present case, the Complaint was signed by Mr. Neiman, D.E. 1, QPS-01.[14] An Amended Complaint, which included only minor changes to the original Complaint, was later signed and filed by Saul Smolar almost 3 months later, after he had withdrawn from the

---

[13] One day after Mr. Neiman signed the 65-page Complaint by which this action was commenced.

[14] The QPS Designation are based on the Hart Report No. 1, 1/13/99. See App. 1.

case. D.E. 34. The veracity of the original Complaint, which was signed by Brian Neiman, is the subject of Defendants' Motions reviewed herein.

18. The Response by Plaintiff to Defendant ALUSA's First Request for Production was signed by Brian Neiman. QPS-13. The Response included several objections that resulted in a Motion to Compel Production. D.E. 54. That motion was granted by Judge Seltzer. D.E. 207, ¶ 2, aff'd. D.E. 247. The ruling was appealed to the District Court (D.E. 210, 213), a process which caused further delay. When finally produced almost one year later, the documents revealed direct contradictions to Plaintiff's claim of purchase and ownership of the Lamborghini and, indeed, were determinative evidence in the instant hearings. The details regarding these documents are herein reviewed in the section discussing Plaintiff's suppression of discovery and the falsity of the Complaint, infra.

19. Plaintiff's Response to Defendant ALUSA's Second Request to Produce to Plaintiff (QPS-16), also signed by Mr. Neiman, raised a Work-Product objection to the originals of affidavits that had already been voluntarily submitted by Plaintiff to the Defendants. Judge Seltzer found this objection unjustified and sanctioned Plaintiff and Mr. Smolar. D.E. 207, ¶ 8. Judge Dimitrouleas affirmed Judge Seltzer's Order by Overruling Plaintiff's Objections to Judge Seltzer's Order.[15] The Plaintiff's groundless opposition to Defendants' discovery Request delayed examination of the Paul Bianchi "affidavit," which is also discussed, infra.

20. Judge Seltzer found material in Plaintiff's Reply in Support of his Motion for

---

15 During closing arguments at these hearings, Mr. H. Dohn Williams, Esq. represented to this Court that Plaintiff's objections to Judge Seltzer's Order imposing sanctions were still pending. D.E. 391 (11/23/99 Tr.) at 21. However, this statement was incorrect. On June 7, 1999, over five months earlier, the District Court Overruled Plaintiff's Objections to Judge Seltzer's imposition of Sanctions. D.E. 247.

Scanned Image - 0:96CV06437 Document 432 page 13 Mon Feb 21 09:44:44 2000

Protective Order (D.E. 77, QPS-27), which was signed by Mr. Neiman, to be totally inappropriate, and he struck portions of the Reply and its attachments. D.E. 207 at ¶ 7.

21.  Judge Seltzer found that another Neiman-signed document, Plaintiff's Response to ALUSA's Motion to Compel Answers to Interrogatories (D.E. 83, QPS-34), contained a misrepresentation to the Court and ordered Mr. Smolar to pay sanctions. D.E. 207 at ¶ 4.

22.  At the Hearing on the present motions, Mr. Smolar testified that his first notice of his obligation to sign court papers with his own hand came with the filing of the instant Motion on January 12, 1999. D.E. 397 (11/19/99 Tr.) at 140.

23.  Attorneys are charged with knowledge of the rules (S.D. Fla. Admin. Rule 1). Moreover, Mr. Smolar was personally notified of the requirements of Rule 11(a) prior to allowing Mr. Neiman to forge his signature on most of the court papers in this case. Specifically, Mr. Smolar has admitted that he was an attorney for the plaintiff in another action in this District, Zarate v. CBS, D.E. 397 (11/19/99 Tr.) at 140. On or about September 28, 1998, Defendant CBS, Inc. moved to strike the Complaint as a violation of Rule 11(a) (Exclusive Ex. 1) because the Complaint had been signed by Mr. Smolar's receptionist. The CBS Motion to Strike quoted Rule 11(a): "Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name." Nonetheless, subsequent to this direct notification, Mr. Neiman, who is not an attorney, signed 22 more court papers in this case.

24.  Mr. Smolar permitted Mr. Neiman to sign court papers with full knowledge that Mr. Neiman has a criminal record for fraudulent conduct. It has been stipulated that Mr. Neiman has been convicted of:

- **Adjusting without a license**, on December 5, 1990, adjudicated guilty; sentenced to 6 months' probation and restitution.

- **Insurance fraud** (felony), on May 23, 1996, pled guilty; sentenced to two years probation and restitution.

- **Grand theft** (felony), on May 23, 1996, pled guilty; sentenced to two years probation.

- **Organized fraud** (felony), on May 30, 1996, pled guilty; sentenced to 18 months' probation and restitution.

- **Practice of law without a license**, on April 19, 1999 (five counts); adjudicated guilty; sentenced to five years' probation.

Def. Ex. 11/19-1.

25. By ALUSA's Memorandum dated October 15, 1998, Mr. Smolar was notified of the three felony convictions and the underlying fraudulent conduct and claims described in informations and probable cause affidavits. D.E. 52, 53. Moreover, the Memorandum referred to the prior orders of United States District Judges Ryskamp, Vitunac and Middlebrooks, condemning the conduct of Mr. Neiman in other cases in this District. Id.

26. Despite Mr. Smolar's knowledge of Mr. Neiman's fraudulent conduct and the strictures of Rule 11(a), he allowed Mr. Neiman to thereafter sign twenty-two more court papers in this case. In fact, Mr. Smolar allowed Mr. Neiman to sign Plaintiff's Reply to the very memorandum that recited Mr. Neiman's criminal background. D.E. 77 (QPS-27), D.E. 397 (11/19/99 Tr.) at 162. Mr. Smolar also admitted that he had previously been aware of Mr. Neiman's criminal past. D.E. 397 (11/19/99 Tr.) at 154.

27. Mr. Smolar explains his practice of allowing non-lawyers, such as Mr. Neiman, to forge his name on Court documents on the ground that he was a sole practitioner with offices

Scanned Image - 0:98CV4621 Document 632 page 15 Mon Feb 21 09:44:48 2000

and clients in three locations. Since he was frequently away from his Fort Lauderdale office, he reviewed and approved every document via fax and/or telephones prior to directing Mr. Neiman to falsify his signature. D.E. 181 (1/28/99 Tr.) at 57-58; D.E. 208 at 7; D.E. 397 (11/19/99 Tr.) at 150; D.E. 401 at 8.

28.  Mr. Smolar has testified that he merely glanced at the sections of ALUSA's Memorandum (D.E. 54) detailing Mr. Neiman's criminal record. D.E. 397 (11/19/99 Tr.) at 156.

29.  When asked by this Court how, if he had not read that section, he could have prepared the (Neiman-signed) Reply, Mr. Smolar explained that Plaintiff's Response to ALUSA's section on Mr. Neiman's criminal past was only a small part of the Reply. D.E. 397 (11/19/99 Tr.) at 163-164.

30.  Mr. Smolar filed self-signed court papers on February 23, 1999. D.E. 179. This was forty-two (42) days after ALUSA's Rule 11(a) Motion was filed.

31.  At the time Mr. Smolar re-signed and filed the papers, he had already withdrawn as counsel, and therefore was not "counsel of record," pursuant to Rule 11(a).

32.  Fourteen (14) court papers in this case remain unsigned by any attorney. Def. Ex. 8/3-6.

**C. Plaintiff's Obstruction of Discovery of Evidence Establishing Falsity of Complaint**

33.  In this case, Judge Seltzer has sanctioned five (5) separate episodes of obstructive discovery conduct by Plaintiff, Mr. Smolar and Mr. Neiman. D.E. 207.

34.  Judge Seltzer found that in the first 10 months of this action, Defendant received virtually no meaningful discovery from Plaintiff (Id. at ¶ 12), ordered sanctions for discovery obstruction, and repeatedly warned that dismissal could be the next sanction. Id. at ¶¶2,4,12.

Received Image 0-96CV6521 Document 423 Document 423 Page 16 Mon Feb 21 09:44:30 2000

35. In Defendant ALUSA's First Request for Production, ALUSA requested documents

relating to the 1996 Ferrari and 1997 Ferrari.[16] To that seemingly uncontroversial request,

Plaintiff vociferously objected:

Mr. Martins [sic] 1996 Ferrari has absolutely nothing whatsoever to do with this litigation. The defendants are harassing the plaintiff by demanding he turn over 48 different classes of documents for a vehicle (his 1996 Ferrari) which has zero to do with this case.

Def. Ex. 8/3-9 (emphasis in original); Def. Ex. 11/19-6 (QPS-13).

Defendants filed a Motion to Compel (D.E. 54), which was granted. D.E. 207, ¶ 2. Mr.

Neiman appealed the Order. Plaintiff joined in that motion (D.E. 210, 213), yet at the same

time he filed a response stating that he had no Ferrari documents. D.E. 212.

The United States District Court Denied the Appeal and Ordered Production. D.E. 247.

Again, Plaintiff failed to turn over any Ferrari documents, and again claimed he had none. Pl.

Ex. 38 at ¶ 6. As a result, Defendants' Requests were evaded for 10 months by objections

to documents that Plaintiff claimed he did not have.

36. Plaintiff also Moved for a Protective Order to production sought by ALUSA from

the Ferrari dealer. D.E. 40. The motion was Denied. D.E. 207 at ¶ 1. Again, appeal was

taken (D.E. 210, 213) and denied. When the Ferrari dealer was finally allowed to produce the

records 8 months after being subpoenaed, the following records were discovered:

• A cashier's check from Mr. Neiman's Merrill Lynch account used to purchase the 1996 Ferrari with an authorization to issue the check signed by him. Def. Ex.

---

16 As discussed previously, Mr. Neiman complained that his 1996 Ferrari was defective. Ferrari capitulated and gave Mr. Neiman a new 1997 Ferrari, which he used as a trade-in for the Lamborghini purchased from Prestige. D.E. 247 at 3.

8/3-10.

- A letter dated February 27, 1997, written and signed by Mr. Neiman, in which he

10 times declares the Ferraris as his. Def. Ex. 8/3-11.

- A General Release of Ferrari and its dealer purportedly from Plaintiff and Mr.

Neiman, but on which Mr. Neiman forged Plaintiff's signature. Def. Ex. 8/17-10;
D.E. 369 (8/17/99 Tr.) at 127-128; D.E. 339 (Martin Dep.) Vol. I at 57.

37.    Plaintiff attached several so-called "affidavits'" to his Class Action threat letter of
November 6, 1997. Among them was an unnotarized statement of Mr. Paul Bianchi ("Bianchi
Affidavit,"), dated "this 25 day of March, 1997," a mere eighteen days after the Lamborghini
was purchased.[17] Def. Ex. 11/19-4; Pl. Ex. 23c.

ALUSA, by its Second Request to Produce, requested that Plaintiff produce the original
"affidavit" for inspection. In the September 11, 1998 Response, signed by Mr. Neiman, Plaintiff
objected, claiming that the original affidavit was "the height of attorney work product," even
though a putative copy of the original had already been sent to Defendants. Def. Ex. 11/19-5
at Tab 3 (QPS-16).

At a conference to resolve discovery disputes, the Sachs firm (which was then
representing Plaintiff) withdrew this unjustified objection and agreed to produce the affidavit
at the Hart Lab on a certain date. Def. Ex. 11/19-5, at Tabs 4, 7, 8. However, on the eve of
the scheduled inspection, the Sachs firm was instructed not to turn over the affidavit, and

_____

[17] The true date of the affidavit is in dispute as Plaintiff claims that the date of March 25, 1997
was a typographical error. As of March 25, 1997, the Lamborghini had not been taken to the
authorized dealer for service. Pl. Ex. 13. It is Plaintiff's present contention that the document was
in fact created in September of 1997. Pl. Ex. 23c.

denied possession of the original. Id.; D.E. 156 (under seal).

ALUSA was once again forced to turn to the Court for relief. Only after Mr. Smolar withdrew as counsel was the Sachs firm able to obtain the affidavit and produce it for inspection. D.E. 129. Judge Seltzer imposed sanctions on Plaintiff and Mr. Smolar for their unjustified obstruction. D.E. 207 at ¶ 8.

38. The "original" Bianchi Affidavit was ultimately produced to the Hart Questioned Document Laboratory for inspection, and Linda Hart, a questioned document examiner, testified as to the results. The Court finds Ms. Hart's testimony as to the documents at issue to be authoritative and compelling.

Ms. Hart determined that the nine-page version of the affidavit "lacks document integrity," i.e., that the papers produced to her did not come from the same document. Instead, she concluded that the "original" affidavit was cobbled together from portions of different documents, as follows: (a) the first two pages of the document were laser printed on standard 8½" by 11" paper, and never faxed; (b) the third page, which bore both the date and the signature in two different blue inks, had been faxed and printed out on an A4 paper, a European-style paper that is both longer and narrower than American 8½" by 11" paper. This page was the only page of the first three to contain a fax date stamp; (c) the third page had been altered; approximately one inch had been torn from the bottom of the page, rendering it 1½" shorter than the other pages produced; (d) the remaining six pages were from a separately faxed document; they bore no relation to the rest of the affidavit; and (e) the last three pages of the nine-page fax were never produced (7 of 9, 8 of 9 and 9 of 9). D.E. 397 (11/19/99 Tr.) at 37-41, 44; Def. Ex. 11/19-4.

39. Based upon both Ms. Hart's determination and Plaintiff's stipulation, the Court finds that Mr. Neiman was the person who wrote the date of March 25, 1997 on the Bianchi Affidavit. D.E. 397 (11/19/99 Tr.) at 45, 49.

40. The Court accepts Ms. Hart's opinion that, based upon her experience as a document examiner, to date a document "this 25 day of March, 1997" when the date was actually on or about September 22, 1997, falls outside the normal range of dating errors. Id. at 59-60.[18]

41. At the hearing held on August 17, 1999, on cross examination of Mr. Bianchi, Mr. Bianchi stated that: (a) his first conversation with Mr. Neiman was at the end of March or beginning of April;[19] (b) the affidavit was based on that conversation; (c) the September 1997 fax was of a "finalized version" of the affidavit, and (d) the version of the affidavit submitted as Pl. Ex. 23c was an earlier version. D.E. 369 (8/17/99 Tr.) at 99-101.

42. In its First Request for Production, ALUSA requested documents relating to the payment of insurance for the Ferrari and the Lamborghini. D.E. 56 at Tab 21. Although Plaintiff's costs of insurance were claimed as damages in the Complaint (Def. Ex. 8/3-5 at ¶¶ 158, 166, 172, 199), Plaintiff objected on relevance grounds. Def. Ex. 8/3-9 at ¶¶ 70, 73. Mr. Neiman, forging Mr. Smolar's signature, signed the Objection. Id. Hence, Defendants were

---

[18] Ms. Hart suggested that the following are standard dating errors: Varying mistakes as to the day of the month; mistakenly writing the preceding or following month; and mistakenly writing the previous year in January. Id. at 52-53.

[19] Mr. Bianchi remembered that the conversation took place in March or April, but was uncertain whether the conversation occurred in 1997 or 1998. Since the Bianchi Affidavit was sent to Defendants in November of 1997, the Court believes that the conversation took place in 1997, rather than in 1998.

once again required to file a Motion to Compel to obtain the records, which was granted. D.E.

54, D.E. 207, D.E. 247.

After Plaintiff objected to ALUSA's request for insurance records, ALUSA served a Subpoena Duces Tecum on State Farm, the insurer, seeking, among other things, the insurance payment records. Judge Seltzer found that Mr. Smolar unjustifiably and in bad faith sought to prevent State Farm from complying with this duly authorized subpoena even after having withdrawn, and ordered sanctions. D.E. 207 at pp. 9-10, aff'd, D.E. 247.

ALUSA also served a subpoena on Mr. Neiman seeking insurance payment records. No production was made. ALUSA had to file a Motion to Compel. D.E. 148. This motion was granted. D.E. 207, at ¶ 14. [20]

When the records were eventually produced by State Farm and Brian Neiman, Inc. ("Neiman, Inc."), they showed that all of the insurance payments for the Ferrari and the Lamborghini had been paid by Neiman, Inc. and that none were paid by Plaintiff. Def. Ex. 8/3-12. [21] Thus, Plaintiff did not incur these expenses, which he expressly claimed as his damages in the Complaint.

43. ALUSA's First Document Request also requested, at items 40-42, the tax returns of any person who took deductions or depreciations on the Lamborghini or the Ferari. D.E. 56 at Tab 21. Plaintiff objected: "This request is made for the sole purpose of harassing the Plaintiff." Def. Ex. 8/3-9, at ¶ 42 (QPS-13). The same requests were made in the subpoena

---

[20] Judge Seltzer sanctioned Mr. Neiman for his complete default.

[21] As discussed, infra, Plaintiff's name is printed on the State Farm Florida Automobile Insurance Identification card. Pl. Ex. 18.

duces tecum served on Mr. Neiman to which he did not respond. Defendant had to file Motions to Compel Production of Documents (D.E. 54) and Compliance with the Subpoena. D.E. 148. These motions were granted by Judge Seltzer. D.E. 207 at ¶ 2, 14. Both Mr. Neiman and Plaintiff appealed. D.E. 210, 213. The District Court overruled the objections and ordered production (D.E. 247), which finally occurred on June 18, 1999, 10 months after the request.

Responsive tax returns were finally produced through the offices of Plaintiff's counsel Harris Solomon. Def. Ex. 8/13-17, 18, 19. The only tax returns produced were those of Neiman, Inc. Tax returns of Plaintiff were not produced. On the Neiman, Inc. tax return, the Ferraris and the Lamborghini were declared the corporate property of Neiman, Inc., and were included on the corporation's balance sheet. Deductions and depreciation were taken for those vehicles.

44.   Plaintiff failed to appear at seven (7) consecutive settings of his deposition, including times requested and agreed-upon by counsel. D.E. 207, p. 11; D.E. 296. He finally appeared only after being directly ordered to do so by the District Court. D.E. 295.

45.   Plaintiff failed to answer ALUSA's Local Rule 26.1.G. Interrogatories for nine (9) months. Judge Seltzer issued an Order compelling Answers and imposing sanctions. D.E. 207 at ¶ 4. Plaintiff then responded to Judge Seltzer's Order with unsworn and incomplete Answers. D.E. 235.

**D.   Who Purchased and Owns the Lamborghini and Who Incurred the Damages Alleged**

46.   Plaintiff's Complaint alleges that Plaintiff purchased the Lamborghini. Complaint, D.E. 1 at ¶¶ 14, 15. It repeatedly alleges that Plaintiff paid the purchase price. Id. at ¶¶ 64,

108, 152, 199. Moreover, the Complaint alleges that Plaintiff sustained damages, including

his costs of insurance, costs of repairs and otherwise. Id.

47. The funds used to purchase the Lamborghini came from a cashier's check drawn

from Mr. Neiman's personal Merrill Lynch account. Exclusive Ex. 9 at Tab 7; Def. Ex. 8/3-14;

Pl. Ex. 20, Pl. Ex. 42 (Neiman Aff.) at ¶3; Pl. Ex. 43.

48. As noted above, the District Court has concluded that Plaintiff's claim of being the

purchaser and owner of the Lamborghini is based on his claim that he is the joint owner of the

Merrill Lynch account from which half of the purchase price was paid. D.E. 247 at 3.[22/]

49. The unrebutted evidence establishes that the Merrill Lynch account is not a joint

account. As Plaintiff concedes, the CMA account was opened as a single account. Def. Ex.

11/12-3. The application and agreement were signed only by Mr. Neiman as the primary

account holder. Mr. Neiman is the only person with check-writing privileges on the account.

While the application provided spaces to designate the account as joint, this account was not

so designated. Id.

50. Plaintiff and Mr. Neiman have testified that they pooled their income and shared

all expenses. Plaintiff testified at hearing that for six years, he gave Mr. Neiman all of his

income and "didn't ask for one penny." D.E. 369 (8/17/99 Tr.) at 137. In exchange, they had

an implied agreement that he could use Mr. Neiman's debit card whenever he wanted.[23/] Id.,

------

[22/] Plaintiff has submitted proof that title to the Lamborghini is in Plaintiff's name, as is the vehicle
registration, and the State Farm Florida Automobile Insurance Identification Card for the car. Pl. Ex. 17, 18,
19. Plaintiff's name further appears on the Purchase Agreement and the Owner's Manual for the Lamborghini.
Pl. Ex. 20, 22.

[23/] According to Plaintiff, Mr. Neiman also gave Plaintiff cash whenever he wanted it. D.E. 369
(8/17/99 Tr.) at 137.

Pl. Ex. 42 (Neiman Aff.) at ¶2.

51. Plaintiff did not directly fund Mr. Neiman's CMA account. Plaintiff has testified that none of his money was ever specifically designated for deposit into the CMA account, and that he knows of no such deposits. D.E. 369 (8/17/99 Tr.) at 137. Mr. Neiman's affidavit recites that Plaintiff's money was used for several different household purposes, with no mention of any money being deposited into the Merrill Lynch account. Pl. Ex. 42 (Neiman Aff.) at ¶ 2.

52. David Ellrich, CPA, an accounting and taxation expert who testified at the hearings as an expert witness for Defendants, reviewed the deposits into the account, and determined that all identifiable deposits, totaling some $1.4 million, came from checks from Neiman, Inc. to the CMA account.

53. Mr. Ellrich, who often is required in the course of his practice to make determinations of joint and single accounts, opined that the Merrill Lynch account was not joint and that Plaintiff was not an owner. D.E. 391 (11/12/99 Tr.) at 92.

54. The affidavit of Eva Del Calzo, an administrator with Merrill Lynch, specifically states: "The subject account is maintained solely by Mr. Neiman. It is not a 'joint account.'" Defendant's Ex. 11/19-10 at ¶ 3. The affidavit of a Merrill Lynch representative submitted by Plaintiff is notably silent on the issue of whether the account is joint. Pl. Ex. 43.

55. Plaintiff claims that, as of April 4, 1996, he was given unrestricted use of the CMA Account's debit card. Def. Ex. 11/12-3 at 6; Pl. Ex. 42 (Neiman Aff.) at ¶3; Pl. Ex. 43.[24]

---

24 The Court notes that April 4, 1996 is subsequent to the date of purchase of the 1996 Ferrari. Accordingly, Martin has made no claim that he is the purchaser of the 1996 Ferrari, which was traded in as one-half of the purchase price for the Lamborghini. Also, the District Court has previously found that the Ferraris belonged to Mr. Neiman. D.E. 247 at 3.

forged Plaintiff's signature.[25] D.E. 397 (11/19/99 Tr.) at 18. Unrebutted expert testimony was

adduced that a forged application form is invalid. D.E. 397 (11/19/99 Tr.) at 116.

56. At deposition, Judah Ever, the preparer of the tax returns of Neiman, Inc. and Mr.

Neiman, testified that the expenses run through Mr. Neiman's Merrill Lynch account were the

corporate expenses of Neiman, Inc. and that the Merrill Lynch account was used "like a

corporate checkbook." Def. Ex. 8/3-7 (Ever Dep.) at 30, 56.

57. Plaintiff testified that he surrendered the debit card on or about September 30,

1998, when he moved out of Mr. Neiman's home. D.E. 399 (Martin Dep.), Vol. 1 at 22, 25-27.

58. Plaintiff conceded, in his Response to ALUSA's Third Request to Produce, that he

has no joint accounts with Mr. Neiman. D.E. 212 at 24 ¶ 2.

59. In his affidavit, Bruce Stone, Esq., the immediate past chairman of the Florida Bar

Committee on Real Property, Trust and Estate Planning Law, stated that the Merrill Lynch

account was a single account and not joint. Mr. Stone opined that none of the tests or indicia

for joint status were satisfied here and that Plaintiff simply had the privilege to incur credit card

charges, but that when a charge was made, the property of Mr. Neiman was debited. Def. Ex.

11/19-13. Finally, Mr. Stone examined Mr. Neiman's personal tax returns for the years 1996,

1997 and 1998, and concluded that Mr. Neiman's reporting of all of the CMA Account's

interest and capital gains and losses, constituted further evidence that the account was

———————————

[25] The line in the application form on which Plaintiff's signature was forged read, "If you want

one additional Visa card issued in your name for use by another person, please have that person

sign here." Def. Ex. 11/12-3 (emphasis added).

Scanned Image - 0:98CV6621 Document 422 Image 25 Man Feb 21 09:43:02 2000

entirely Mr. Neiman's. Id.

60. Neiman, Inc. is a Florida corporation. Until May 3, 1999, its registered address was 2417 Aqua Vista Boulevard, Fort Lauderdale, Florida, the former home of Brian Neiman and the place of practice of both Saul Smolar and Norman Ganz. Def. Ex. 11/19-7. On May 3, 1999, the registered office of the corporation was relocated to 1449 14th Street, Fort Lauderdale, Florida. Mr. Neiman's current home. Id. Mr. Neiman is the sole shareholder of Neiman, Inc. and the sole officer, director and employee. Id.; Def. Ex. 8/3-17, 18, 19.

61. In his affidavit, Mr. Ever, Neiman, Inc's accountant, acknowledged that depreciation and expense deductions were taken for the Ferrari and the Lamborghini on the corporate tax returns of Neiman, Inc. Pl. Ex. 40 at ¶ 6.

62. The tax returns of Neiman, Inc. were reviewed in detail by Defendant's accounting and taxation expert, David Ellrich, CPA, who had formerly worked for the Internal Revenue Service for 8 years. Mr. Ellrich's opinions were uncontradicted.

Mr. Ellrich testified that the Lamborghini first appeared on the corporate tax return of Neiman, Inc. in 1997 when the 1997 Ferrari was exchanged for it as of March 7, 1997. The Lamborghini was declared as corporate property and a tangible depreciable asset on the balance sheet of Neiman, Inc., which is embedded in the corporation's tax return. Def. Ex. 8/3-18 at p. 4, Schedule L. This balance sheet was prepared in accordance with the books and records of Neiman, Inc. D.E. 391 (11/12/99 Tr.) at 34. The Lamborghini further appeared on the schedules of tangible assets, and constituted approximately 70% of the corporation's tangible assets listed thereon. It was listed twice on the return and was declared as an asset for 100% business use by the corporation. Id. at 48; Def. Ex. 8/3-18. Depreciation on the

Lamborghini in the amount of $4,410 was taken in 1997. D.E. 391 (11/12/99 Tr.) at 45-46; Def. Ex. 8/13-18. The expenses of service and insurance for the Lamborghini were paid by Neiman, Inc. and were deducted on the corporation's tax returns in 1997 and 1998. D.E. 391 (11/12/99 Tr.) at 82-83. All of these deductions reduced the taxable income of Neiman, Inc., whereby Mr. Neiman, the sole shareholder of Neiman, Inc., received a considerable tax benefit. Id. at 67.

As of December 31, 1998, the Lamborghini remained on the corporate balance sheet of Neiman, Inc. and on the detailed schedules of assets appended to the tax return. Id. at 75. Although no depreciation deduction was taken in 1998, the Lamborghini remained listed as a corporate asset with 100% business use. Id. at 74-76; Def. Ex. 8/3-19.

Previously, the 1996 Ferrari had been included on the corporate balance sheet of Neiman, Inc. and the detailed scheduling of assets in the 1996 tax return. It was claimed as 90% or 100% business use and $2,754 was deducted as depreciation on the Ferrari on the 1996 return of Neiman, Inc. D.E. 391 (11/12/99 Tr.) at 37; Def. Ex. 8/3-17.

Mr. Elirich explained that in taking depreciation deductions, the person who owns the asset is deducting from income each subsequent year after its acquisition a small portion of the purchase price paid. D.E. 391 (11/12/99 Tr.) at 62. Therefore, the party taking the depreciation must have beneficial ownership, have capital invested in the asset, and bear the risk and burden of its erosion in value over time.[26]/ Mere users may not depreciate an asset.

Id. at 67.

---

26 It is not necessary to hold record title in order to depreciate an asset. Id. at 63-64.

Scanned Image = 0:6KCV6621 Document 432 page 27 Mon Feb 28 09:45:04 2000

The Court finds that Mr. Ellrich's opinion on this subject was well prepared, well researched, well documented, credible, and unrebutted by any other credible opinion. Mr. Ellrich cited to several United States Supreme Court cases establishing this principle of ownership, and it is a long-settled principle among accountants. D.E. 391 (Tr. 11/12/99) at 122; See also Helvering v. F. & R. Lazarus & Co., 308 U.S. 252 (1939).

63. Mr. Neiman once purchased a Mercedes 190E that was titled in the name of his then roommate, Steven dos Santos. After dos Santos left, the vehicle continued to be titled in Mr. dos Santos' name, but Mr. Neiman maintained full possession and control and drove the vehicle. D.E. 339 (Martin Dep.) Vol. II, at 73; Pl. Ex. 28 at ¶ 6. The Mercedes 190E was traded in by Mr. Neiman for a 1993 Mercedes 300CE. D.E. 339 (Martin Dep.) Vol. II at 77. Though exclusively used by Mr. Neiman and Plaintiff, it was titled in the name of Joan Jacqueline Martin. Id. In another example, Mr. Neiman, in 1999, purchased a Mercury Cougar, allegedly for one Roman Fayer, yet he arranged to have title issued in the name of Roman Fayer's father. Pl. Ex. 42 at ¶ 6.

76. As has been noted, Mr. Neiman claimed that his 1996 Ferrari was defective and he received a new Ferrari. D.E. 247 at 3. When Mr. Neiman confirmed the settlement to the Ferrari dealer in his letter dated February 27, 1997, Mr. Neiman, several times, described the Ferraris as his ["I," "me," "mine."]. Def. Ex. 8/3-11. The new Ferrari was traded in as approximately one-half the purchase price of the Lamborghini. Pl. Ex. 20.

77. Consistent with that declaration, on March 10, 1997, only three days after the Lamborghini had been purchased in Plaintiff's name, Mr. Neiman reported to his probation officer, Florida Department of Corrections Officer William Henry, as part of his probation

Scanned Image • 00CV6021 Document 432 page 28 Mon Feb 28 09:45:08 2000

sentence on convictions of organized fraud, insurance fraud and grand theft. Upon arrival, he asked Officer Henry to come out to the parking lot to see 'his' new Lamborghini. He stated to Officer Henry that he had "sold his Ferrari and purchased a Lamborghini." This declaration by Mr. Neiman was recorded in the Department of Corrections case notes. Def. Ex. 8/3-15. Officer Henry remembers this episode with specificity. Id. at 12. Convicts serving sentences of probation are obligated to report truthfully. Id. at 1. Mr. Neiman made similar declarations to his other probation officer, Glasford Sharp. Def. Ex. 11/19-14 at Tab 2.

78. Mr. Neiman also made numerous similar declarations to other persons, including that the Lamborghini was his company car. See Def. Ex. 11/19-14 at Tabs 4-10 (Affidavits of Kenwin Daniel, Bernette Snead, Linda Boatright, Alice Fields, Joe Williams, Harold Athouriste, and Janet Arvo).

79. Plaintiff exercises no possession or control over the Lamborghini. When Plaintiff moved out of Mr. Neiman's home on September 30, 1998, the Lamborghini remained in the possession of Brian Neiman. When Mr. Neiman moved to 1449 14th Street, the Lamborghini moved there as well. Plaintiff has not had possession of the Lamborghini in any form for over one year, does not have a key to it, and does not have a key to Mr. Neiman's home or garage. D.E. 369 (8/17/99 Tr.) at 144-147. Plaintiff's total lack of possession of the Lamborghini and retention of it by Mr. Neiman and Neiman, Inc. is inconsistent with Plaintiff's claim of ownership.

80. The evidence adduced at the hearings shows that Mr. Neiman regularly titled automobiles in the names of others, and that no vehicles were ever titled or registered in Mr. Neiman's name. D.E. 339 (Martin Dep.) Vol. II at 66-92; D.E. 365 (8/3/99 Tr.) at 93; Pl. Ex.

Received Image + 8ECV4831 Documents 433 page 26 Item Feb 31 09:41:58 2000

42 at ¶ 17.

81. Counsel for Mr. Neiman and Plaintiff have belatedly proposed that the Lamborghini was a gift to Plaintiff. D.E. 365 (8/3/99 Tr.) at 43, 71; D.E. 391 (11/23/99 Tr.) at 35. The District Court found that, as of June 7, 1999, Plaintiff had not asserted that the Lamborghini was a gift. D.E. 247 at 3, n. 2. No subsequent pleading states such claim. This new theory is inconsistent with the Complaint, which plainly states that Plaintiff purchased the Lamborghini, and makes no allegation that the Lamborghini was a gift. D.E. 1.

82. As the Lamborghini's value is in excess of $10,000, Mr. Neiman would have been required to file a Federal Gift Tax return by April 15, 1998, had it been a gift. 25 U.S.C. § 6019, D.E. 391 (11/12/99 Tr.) at 85. He did not. Def. Ex. 8/3-7 at 9. Most importantly, the Lamborghini remained on the corporate balance sheet of Neiman, Inc. at the close of the year 1998. Notably, when Plaintiff's Complaint was filed on June 15, 1998, the Lamborghini was listed as the property of Neiman, Inc.

83. Prior to the hearing on January 28, 1999, Plaintiff admitted to be involved in all that had been done on his behalf, signing an affidavit swearing:

1)     ... This affidavit is made based on my personal knowledge.

***

3)     I have carefully read Defendant Automobili Lamborghini USA, Inc.'s Motion to Enforce Rule 11(a) as to Plaintiff.

4)     I personally read and approved each court filing and each letter identified in the Hart Report which pertain to my case.

5)     The Law Office of Saul Smoiar, P.A. obtained my approval on each court filing/letter before the court filings/letters were submitted to the court.

(6)     The positions taken in those letters/court filings are my own.

(7)     While certain court filings and letters in this case may not have
been personally signed by Saul Smolar, I personally reviewed and
approved *each* letter and *each* court filing before it was sent.

(8)     I hereby reaffirm that the arguments/positions taken in those
letters/court filings are my own.

Def. Ex. 11/19-8 (emphasis in original).

84.    In support of his Motion for Protective Order (D.E. 40), Plaintiff signed another

affidavit on October 30, 1998 that described Neiman's Merrill Lynch account as "our account."

Def. Ex. 11/19-9 (emphasis in original).    When he signed the affidavit, Plaintiff believed his

credit card had a limit of either $25,000 or $100,000.   D.E. 339 (Martin Dep.) Vol I at 33; D.E.

369 (8/17/99 Tr.) at 131.[27]   Either of these limits is much less than the trade-in balance on the

Lamborghini, which was $145,000.

85.    While pro se, Plaintiff furnished Neiman's address to this Court as his own, thereby

directing Defendant's papers and the Court's papers to the hands of Mr. Neiman. D.E. 194,

D.E. 211-213, D.E. 220-222, D.E. 233.   All of his other mail was directed to Plaintiff's Granada

address or to his parents. D.E. 339 (Martin Dep.) Vol. I, at 41.   Because of the false address

furnished to the Court, Judge Seltzer had to order the federal marshal to serve a copy of his

Order of April 29th directly upon Plaintiff.  D.E. 214.

86.    Plaintiff's participation in the duplicity was evident even at the hearings before this

Court.   On June 18, 1999, Plaintiff's counsel, in response to ALUSA's request for the portions

---

[27]   Although the actual limit turned out to be higher, depending on the balance of certain
components of the account, this fact relates to Plaintiff's willfulness in deceiving the Court when he
stated that he, himself, purchased the Lamborghini.  See Def. Ex. 11/19-10, Pl. Ex. 43.

of the tax returns of any person who had depreciated or deducted expenses for the Lamborghini or the Ferrari, produced the tax returns of Neiman, Inc. Thereafter, the very same Plaintiff's counsel argued at hearing that because the automobile on the tax returns could not be identified, the returns were not evidence of Neiman, Inc.'s ownership of the Lamborghini. D.E. 365 (8/3/99 Tr.) at pp. 89-93. The same counsel even claimed that the automobile on the tax returns "could not have been the Lamborghini." Id. at 91.

A mere six weeks later, Plaintiff's counsel filed an affidavit of Mr. Ever, the accountant who prepared the tax returns, stating that deductions for expenses and depreciation were taken on the Ferrari and the Lamborghini by Neiman, Inc. Def. Ex. 11/12-1 at ¶ 6, Pl. Ex. 40. At the very next hearing, Plaintiff's counsel objected to Mr. Elrich's use of the Ever affidavit to help identify the vehicles on the tax returns as the Ferrari and Lamborghini. D.E. 391 (11/12/99 Tr.) at 41-42. At hearing, Plaintiff himself perpetuated the claim that Mr. Neiman had no ownership interest in either the Ferraris or the Lamborghini. D.E. 369 (8/17/99 Tr.) at 128, 133, D.E. 208, 247.

III. CONCLUSIONS OF LAW

A. Class Action Threats

After careful consideration of the Findings above, the Court finds that Plaintiff and his legal team used threats of a class action lawsuit to extort a large settlement from Defendants. This same conduct was found by District Judge Ryskamp and Magistrate Judge Vitunac to have been sanctionable less than a month before this lawsuit was filed. See Barnett v. Doctors & Associates, Inc., S.D. Fla. Case No. 95-6837-CIV-RYSKAMP, D.E. 298. Mr. Smolar and Mr. Neiman were therefore on notice that this practice was unacceptable prior to

sending their June 15 and July 1, 1998 letters. Moreover, by his affidavit dated January 27, 1999, Plaintiff has approved these tactics and adopted them as his own. Def. Ex. 11/19-8.

In Bonfiglio v. Nugent, the 11th Circuit reprimanded such abusive tactics, noting that "the harm inflicted by vexatious litigation extends beyond systemic considerations. In bad faith lawsuits there are innocent parties who are victimized by abuses of the judicial systems...." 986 F.2d 1391, 1394 (11th Cir. 1993).

The Court finds that Mr. Neiman, the author of this lawsuit, acted in bad faith from the time he purchased the Lamborghini. The facts lead the undersigned to conclude that Mr. Neiman purchased the automobile with the intent of using it to seek financial advantage, particularly by threatening Defendants with a class action lawsuit, which was never filed, at a time when the corporate stock of ALSPA and ALUSA were being acquired. This District is becoming well-acquainted with Mr. Neiman's "legal process blackmail," as it has been called by Judge Ryskamp.

Prior to purchasing the Lamborghini, Mr. Neiman was privy to sensitive information about Lamborghini and its automobiles through several of its former, disgruntled employees. As noted, Mr. Neiman and Mr. Ganz represented former employees that are now witnesses in this case. As early as 18 days after he purchased the automobile, Mr. Neiman was contacting Defendants' former employees and collecting evidence for use in a lawsuit against Defendants.

In light of Plaintiff's approval of his lawyer's threatening letters, and in the absence of any explanation, the Court finds that Plaintiff and his legal team acted in bad faith to extort a large settlement from the Defendants. Viewed in conjunction with prior reprimands from this

Scanned Image - 0:98CV6621 Document 432 page 33 Mon Feb 21 09:46:12 2000

District for the same type of behavior by Plaintiff's legal team, the Court finds that this conduct is sanctionable.

**B.  Repeated Violations of FRCP Rules 11(a) and 26(g).**

The forgeries committed by Mr. Neiman with the cooperation of Mr. Smolar unfairly impeded, delayed and significantly added to the time and expense of these proceedings. This is precisely what Rules 11(a) and 26(g) are designed to prevent.  See Fed.R.Civ.P. 11, Advisory Committee Notes, Fed.R.Civ.P. 26, Advisory Committee Notes.

Mr. Smolar has failed to provide a satisfactory explanation for his conduct and has also failed to cure the violations within a reasonable time.  Pursuant to the Federal Rules, Mr. Smolar had the opportunity to 'promptly correct' his signature violations once he was placed on notice of them.  See Fed.R.Civ.P. 11, Fed.R.Civ.P. 26.  The Court finds that forty-two (42) days after Defendant's Rule 11(a) Motion was filed was not a prompt correction.  Even though Mr. Smolar was not Counsel of Record at the time the Rule 11(a) Motion was filed, the Sachs law firm had the authority to submit the appropriate documents.  In any case, Plaintiff could have promptly sought permission from the Court for Mr. Smolar to re-submit the corrected documents.

The Court finds that the 36 undisclosed counterfeit signatures by Mr. Neiman over a six-month period, alone and in combination with forgeries in other cases in this District, constitute a pattern of flagrant disregard for the rules for this Court.  Indeed, the Court is unaware of any other case where a violation of Rules 11(a) and 26(g) begins to approach the extent and egregiousness of the forgeries here.  Nor was there any effort to contemporaneously disclose them.

Scanned Image - 9:96CV6621 Document 622 page 34 Mon Feb 21 09:45:14 2000

The Court also finds that substantial prejudice was caused to the Defendants and to the Court's integrity by these mass violations of the Rules. The very purpose of the signature requirements is to prevent or deter the adoption of unjustified positions in pleadings and discovery. The fact that several Neiman-signed papers necessitated defense motions and imposition of sanctions and striking is evidence that the forgeries were prejudicial and injurious.

Furthermore, Mr. Smolar testified that he read and approved each Neiman-signed paper. This claim was not only contradicted by Mr. Smolar's own testimony, but the Court finds it incredible that this amount of lengthy court papers could be approved and authorized in the manner claimed. However, whether or not Mr. Smolar approved the court documents, Mr. Smolar abdicated his responsibility and privilege to practice law before this Court by allowing Mr. Neiman to sign his name to them. This abdication was reprehensible, in light of Mr. Smolar's prior direct and actual notice of the requirements of the Rules and his knowledge of Mr. Neiman's criminal fraud background. Accordingly, in signing Mr. Smolar's name to the court papers, Mr. Neiman wrongfully exercised privileges of a member of the Bar of this District, though not admitted to the District or any other Bar.

**C. Plaintiff's Obstruction of Discovery of Evidence Establishing Falsity of Complaint**

The Court finds that Mr. Neiman, acting as Saul Smolar, personally thwarted and delayed the production of evidence which, when finally produced, showed:

- He – not Plaintiff – paid for the Ferrari;
- He – not Plaintiff – claimed to own the Ferrari;
- His corporation – not Plaintiff – paid and deducted the expenses for the

Scanned Image - 0:00CV6202 Document 432 page 35 blast on Fri Jul 25 09:45:16 2000

Ferrari and the Lamborghini:

- His corporation – not Plaintiff – declared the Lamborghini (and previously the Ferrari) as corporate assets and depreciated them;

- His corporation – not Plaintiff – paid all of the insurance premiums and expenses of service for the Lamborghini; and

- He began obtaining statements for use in this lawsuit at least as early as 18 days after the Lamborghini was purchased.

All of this evidence, which directly contradicts allegations in the Complaint and casts doubt on Plaintiff's good faith, was suppressed for almost a year by court papers actually signed by Mr. Neiman.  Mr. Smolar claims to have authorized those papers. D.E. 181 (1/28/99 Tr.) at 57-58.  Moreover, Plaintiff took part in these acts, as he has sworn that he preauthorized, pre-approved and adopted them.  Def. Ex. 11/19-8.

The Court finds that these efforts to delay, suppress, thwart, and protract discovery were deliberate and were for the purpose and motive of avoiding the production of evidence supporting Defendants' defense that Plaintiff is not the real party in interest of the claims brought in the Complaint.

Neiman wrote and signed the letter to Shelton Sportscars pronouncing that the Ferraris were his.  Yet Neiman also signed the Objection to the production of any Ferrari records, claiming they had nothing to do with this litigation, when in fact they did.

Neiman paid for the Lamborghini with his funds from his account, and reported to his parole officer that he had purchased the Lamborghini.  Yet Neiman also signed the Complaint which claimed that Plaintiff made the purchase.

Scanned Image - 9:96CV6621 Document 422 page 36 Mon Feb 21 09:42:16 2000

Neiman, as the sole shareholder and officer of Neiman, Inc., declared the Lamborghini

as an asset of the corporation, and deducted depreciation of it and the repair and insurance

expenses of the car by the corporation. Yet Neiman also signed the Complaint alleging

Plaintiff owned the Lamborghini and incurred the costs of repair and insurance.

Plaintiff and Mr. Neiman continue to shield evidence from this Court. For example, on

January 28, 1999, at the hearing before Judge Seltzer, Mr. Neiman conceded to the Court that

he participated in the purchase or had an ownership interest in the Lamborghini. D.E. 181 at

27. As previously noted, the District Court acknowledged this concession, ordering that the

remaining issue concerning ownership was whether Plaintiff was merely Mr. Neiman's

nominee and whether Plaintiff also had an ownership interest. D.E. 208.

Yet, at the beginning of the hearings before the undersigned, Plaintiff attempted to

withdraw that concession, claiming that it had only been offered as a proposed (and rejected)

stipulation.[28] As recently as October 29, 1999, while the undersigned presided over these

hearings, Mr. Neiman signed an (undated) affidavit stating that he had no ownership interest

in the Lamborghini or the Ferraris, directly contradicting his earlier concession and subsequent

finding of the District Court. D.E. 208 at 7, D.E. 247. Further, Mr. Neiman and Mr. Smolar,

through counsel, represented to the undersigned that only three (3) of Plaintiff's court papers

violate Rule 11(a). D.E. 365 (8/3/99 Tr.) at 54. However, fifteen (15) court papers actually

_____

[28] Throughout the hearings, both Plaintiff and Mr. Neiman have disregarded the District
Court's earlier findings and have offered arguments that flatly contradicted them. However, neither
has requested that the District Court reconsider its findings of facts in its Orders of April 30, 1999
and June 7, 1999. D.E. 208, 247.

Scanned Image - 0:00CV06621 Document 432 page 37 Mon Feb 21 09:45:18 2000

violate that Rule.[29] Def. Ex. 11/19-6. Twenty-one (21) more transgressed Rule 26(g). Id.

## D. Who Purchased and Owns the Lamborghini and Who Incurred the Damages Alleged

Pursuant to Federal Rule of Civil Procedure 17, "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a). Based upon the foregoing findings of fact, the Court concludes that Plaintiff, although he holds state record title and registration, is not the real party in interest in this action.

Plaintiff's Complaint is predicated on the assumption that Plaintiff is the purchaser and owner of the Lamborghini. The Complaint asserts that Plaintiff was injured because the Lamborghini's alleged defects have rendered it less valuable and required Plaintiff to expend his funds to repair the defects. Further, the Complaint asserts that, had Defendants informed Plaintiff of the alleged defects, he would not have spent his money to purchase the Lamborghini, nor would he have incurred such incidental expenses as the costs of insurance on the vehicle. D.E. 1, ¶ 34.

The evidence presented at hearing shows, indisputably, that none of these assertions are true. The Lamborghini was purchased by Mr. Neiman and is owned by Mr. Neiman and/or Neiman, Inc. Def. Ex. 8/3-7, 14, 15, 17-19; 11/12-3; 11/19-13; D.E. 391 (11/12/99 Tr.) at 32. Mr. Neiman and/or Neiman, Inc. incurred and paid the repair expenses. Def. Ex. 8/3-16 (a-b); D.E. 391 (11/12/99 Tr.) at 82. Neiman, Inc. incurred, as depreciation, the loss of value of the Lamborghini. Def. Ex. 8/3-18; D.E. 391 (11/12/99 Tr.) at 47. Mr. Neiman and/or Neiman, Inc.

---

[29] When caught in their deception, Mr. Smolar claimed that they interpreted Rule 26(g) to govern motions and memoranda to the Court concerning discovery. D.E. 391 (11/23/99 Tr.) at 18-19. Such an interpretation is contrary to the plain language of Rule 26(g), which describes its application to "disclosures, discovery requests, responses and objections," and, as such, their claim is neither credible nor well grounded in law.

Page 37 of 50

Received Image: 0:36CV4637 Document 7 Document t22 page 34 Mon Feb 21 09:43:22 2000

incurred and paid the cost of insurance. Def. Ex. 8/3-12; D.E. 391 (11/12/99 Tr.) at 81.

Further, the evidence adduced at the hearings establishes that Mr. Neiman regularly

titled his automobiles in the names of others, and that no vehicles were ever titled or registered

in Mr. Neiman's name. D.E. 339 (Martin Dep.) Vol. II at 66-92; D.E. 365 (8/3/99 Tr.) at 93; Pl.

Ex. 42 at ¶ 7.

Under Florida law, although a registered certificate of title establishes a presumption

of ownership, such presumption may be overcome by competent evidence. Nash Miami

Motors, Inc. v. Bandel, 47 So.2d 701, 703 (Fla. 1950); Sterling v. Gov't Employees Ins. Co.,

600 So. 2d 14, 16 (Fla. 5th DCA 1992).[30] Based upon the Court's review of the preceding

evidence and the other evidence presented at the hearings, the Court finds that Defendants

have met their burden of proving that Mr. Neiman is the equitable owner of the Lamborghini.

In addition, Plaintiff argues that, as titleholder, Plaintiff is the only person who could

bring a claim under the Magnuson-Moss Act. The Magnuson-Moss Act provides that "a

consumer who is damaged by [breach of a written or implied warranty] . . . may bring suit for

damages and other legal and equitable relief." 15 U.S.C.A. § 2310(d)(1). There is no

requirement that the "consumer" hold record title. For example, Federal courts have heard

Magnuson-Moss Act claims brought by lessees of vehicles. See, e.g., Hall v. American Honda

---

[30]/ Plaintiff cites Lamar v. Wheels Unlimited, Inc., 513 So. 2d 135 (Fla. 1987), for his

contention that title is conclusive proof of ownership under Florida law. In Wheels Unlimited, the

Florida Supreme Court held "that the term 'owner' with respect to motor vehicles being forfeited

under the Florida Contraband Forfeiture Act is limited to one who has obtained a title certificate

pursuant to chapter 319 or who falls within one of the enumerated statutory exceptions." Id. at 137.

That case simply does not apply in the present context. The court based its holding on the

practicalities of forfeiture proceedings and envisioned that an equitable owner that did not hold

record title could obtain the certificate of title from its holder by court action or otherwise. Id. at n.

2.

legal fees to law firms in this case and made a payment to a witness. Neiman, Inc. (not Mr. Smolar or Martin) paid the fee to the clerk to file this case. Def. Ex. 11/19-15. As noted above, Mr. Neiman arranged to receive Plaintiff's court papers during the period Plaintiff allegedly appeared *pro se*.

Through the threat letter of June 15, 1998, Mr. Neiman made an extortionate settlement demand and falsely threatened a class action in this case. Mr. Neiman apparently hoped to obtain a payoff by "holding up" the transaction. It is the same type of "blackmail" by Mr. Neiman that has been decried by Judge Ryskamp. Def. Ex. 8/3-3. As he has so many times in the past, Mr. Neiman has attempted to use this District Court as a means of extortion.

Mr. Neiman was also the person who contacted Mr. Bianchi, obtained his affidavit and wrote the date of execution on it. When Defendants legitimately sought production and inspection of the original, it was Mr. Neiman who signed the objection, asserting a plainly unjustified work product objection. After Sachs, Sax & Klein agreed to produce the originals, that firm was forced to renege.

After weighing all the evidence, the Court finds that--aside from orchestrating the lawsuit from the time the car was purchased--Mr. Neiman's activities far transcended his titular position as a "Senior Paralegal" for Plaintiff's counsel. In the present case, Mr. Neiman acted as Plaintiff's counsel, as well as the undisclosed real party in interest.

**F. Misconduct by Saul Smolar, Esq.**

Mr. Smolar's behavior in this lawsuit is likewise reprehensible. The July 1, 1998 class action threat letter was sent by Mr. Smolar under his own signature. In it, he threatened to file a class action on July 7, 1998 unless Defendants settled. To date, there has been no such

Motor Co., Inc., 1997 WL 732458 (E.D. Pa. 1997).

The Court finds that Plaintiff's claim to hold title to the Lamborghini neither proves his ownership, nor would have prevented Mr. Neiman or Neiman, Inc. from bringing a claim against Defendants. Mr. Neiman or Neiman, Inc. was secretive about his ownership interest from the start of this lawsuit and vigorously obstructed discovery into the matter. Now that his true role has been revealed, he seeks to be joined as a party. This behavior is contemptible. Further, Plaintiff knowingly facilitated Mr. Neiman's deceit by adopting the false Allegations and lending his name to them. Def. Ex. 11/19-8.

Moreover, Plaintiff's present claim that the Lamborghini was a gift is contrary to his own theory of the case[31] as well as Florida law. Florida law holds that a gift requires donative intent, delivery or possession, and surrender of dominion and control. Reiner v. Reiner, 400 So. 2d 1292, 1293 (4th DCA 1981). Mr. Neiman's repeated declarations that the car was his (Def. Ex. 11/19-14), his declaration of it on Neiman, Inc.'s balance sheet (Def. Ex. 8/3-18, 19), his retention of the car, and Plaintiff's testimony that he has not had possession, keys to the car, nor keys to the garage in which it is kept (D.E. 369 (8/17/99 Tr.) at 144-147) show these requirements were not met.

**E. Brian Neiman's Involvement**

Mr. Neiman's command over this litigation is manifest. Two of Plaintiff's former counsel conducted their law practices from his home. As discussed, supra, Mr. Neiman signed the obstructive responses to Defendants' discovery requests. He or his corporation paid Plaintiff's

---

31/ Plaintiff misled the District Court into believing Plaintiff purchased the car himself. Then, when the Defendants discovered that Plaintiff didn't actually purchase the car, Plaintiff decided to say it was a gift. Plaintiff's and Mr. Neiman's attempts to elude the Court will not be tolerated.

filing. Mr. Smolar further claims to have authorized a similar threat contained in the June 15, 1998 letter signed by Mr. Neiman.

The Court finds that Mr. Smolar attempted in bad faith to extort monies from Defendants with a false threat of class action litigation. Mr. Smolar admits that he had been previously aware of the Subway Sanctions Order.

Moreover, Mr. Smolar essentially handed his license to Mr. Neiman, allowing him to sign his name to over thirty-six (36) court papers. This transfer of responsibility was reprehensible because: (1) By no later than September 28, 1998, Mr. Smolar had been specifically advised that it was improper under Rule 11(a) to allow non-lawyers to sign court papers; and (2) By no later than October 15, 1998, he was made specifically aware of Mr. Neiman's record of fraud. Even after being so informed, Mr. Smolar claims to have allowed Mr. Neiman to sign his name to twenty-two (22) more court papers in this case, as well as numerous court papers in other cases in this District.

Mr. Smolar allowed his name to be placed on suspect objections to legitimate and well-directed discovery requests of Defendants. In addition, Mr. Smolar, in an effort to shield Mr. Neiman's interest in this lawsuit, interfered with a subpoena served on State Farm to obtain the insurance payment records, after he had withdrawn as counsel for Plaintiff. D.E. 207 at 7, 9-10.

The Court finds that Mr. Smolar committed and abetted a violation of the rules, willfully failed to supervise Mr. Neiman, and participated and abetted the blatant obstruction of discovery in this case. Without his complicity, Mr. Neiman could not have so abused the judicial process. Accordingly, the Court finds that Mr. Smolar participated in the fraud on the

Court.

## G. Effect of Defendants' Settlement Offer

Plaintiff argues that Plaintiff's claim is not frivolous because there has been a settlement offer by Defendants suggesting that Plaintiff's claim has factual merit. D.E. 365 (8/3/99 Tr.) at 98; Pl. Ex. 41. This argument is supported by an affidavit of Plaintiff's counsel claiming Defendants made an offer in excess of the Lamborghini's value. D.E. 378. The Court finds that the settlement offer has no effect on Defendants' claim of Fraud on the Court. Where, as here, the Defendant's claim speaks to the fraudulent conduct of the Plaintiff and his lawyers, the factual justifications for the suit are immaterial.[32]/

## H. Plaintiff's Motion for Sanctions

Plaintiff's Motion for Sanctions Against ALUSA, ALSPA, Winthrop, Stimson, Putnam & Roberts and Mullin & Galloway, P.A., Pursuant to 28 U.S.C. §1927 and the Court's Inherent Power to Sanction refers to ALUSA's Fed.R.Civ.P. 11(b) Motion for Sanctions (D.E. 197). Plaintiff maintains that this Motion caused Plaintiff to incur expenses to defend a claim raised by ALUSA that the lawsuit had no basis in law or fact, which ALUSA later abandoned. Plaintiff argues that, at the August 3, 1999 hearing on Defendants' Motions, Defendant misled Plaintiff by failing to stipulate that Plaintiff's underlying lawsuit had merit. Thereafter, Plaintiff incurred expenses of bringing in witnesses to testify as to the defective nature of the Lamborghini.

Defendant ALUSA stated in its Motion for Rule 11(b) Sanctions that "Plaintiff's

---

[32]/ Plaintiff cites Sullivan v. School Board of Pinellas County, in which the Eleventh Circuit held that "[f]actors considered important in determining whether a claim is frivolous also include...(2) whether the defendant offered to settle..." 173 F.2d 1182, 1189 (11th Cir. 1985). The Court carefully noted that its holding was to be interpreted as "general guidelines" only. Id. In this case, the Court does not find the settlement offer to be a determining factor, as Defendants' claims address the fraudulent basis for the Plaintiff's suit.

Complaint lacks any factual or legal predicate" (D.E. 197 at 2). D.E. 369 (8/17/99 Tr.) at 72-73. The Motion further reads: "Plaintiff reports that *he* was injured by ALUSA because the vehicle *he* purchased was defective." D.E. 197 at 2 (emphasis in original). The body of that motion is plainly limited to Plaintiff's attorneys' failure to make a reasonable inquiry and continued advocacy of Plaintiff's claim that Martin was the real party in interest. As well, on May 20, 1999, Defendant moved to strike Plaintiff's Notice of Filing 11 Affidavits in response to Defendant's Motions (D.E. 128; D.E. 164; D.E. 197) on the basis that the affidavits did not in any way relate to the matters advanced in those motions. While the Court denied the Motion to Strike (D.E. 349) on the grounds that the undersigned prefers to have a full understanding of papers before striking them, Plaintiff, Mr. Neiman, and Mr. Smolar were on notice by the Motion to Strike that Defendants did not include the merits of the defects claims in any of the above motions.

Moreover, ALUSA's counsel was clearly never obligated to stipulate that Plaintiff's claims of a defective Lamborghini have merit. Furthermore, after reviewing the August 3, 1999 transcript, the undersigned finds that ALUSA's Counsel, John Dotterer, stated to the Court that ALUSA's 11(b) claim was based on the identity of the Plaintiff, rather than on the particular attributes of the car, itself. See D.E. 365 (8/3/99 Tr.) at 81. Whether or not ALUSA abandoned this 'wrong-plaintiff' theory, the claim did not necessitate the calling of witnesses to testify to the defectiveness of the Lamborghini. It was Plaintiff's own choice to try to shift the Court's attention to those matters. Thus, the Court finds Plaintiffs Motion to be baseless, and yet another attempt to muddle the record in this case.

Scanned Image - 0:96CV6621 Document 432 page 43 Mon Feb 21 09:45:32 2000

Based on all of the foregoing, it is hereby

1. **RECOMMENDED** that Mr. Neiman be adjudged to be in civil contempt of this Court for having repeatedly exercised the privileges of a member of the District Bar in violation of Southern District of Florida Rule 11.1.B. The Court RECOMMENDS that a civil contempt fine be assessed against Mr. Neiman of an amount to be determined at a later hearing. In addition, the Court RECOMMENDS that Mr. Neiman be Referred to the Grievance Committee of the Florida Bar and the State Attorney's Office for investigation into his activities related to the unauthorized practice of law.

2. **RECOMMENDED** that Mr. Smolar be adjudged to be in civil contempt of this Court for allowing Mr. Neiman to sign at least 22 court papers in this case alone after having been specifically notified on the operation of Rule 11(a) and of Mr. Neiman's past criminally fraudulent conduct. This practice extended to many other cases before this District Court. Accordingly, the District Court should find Mr. Smolar to be in violation of Rules 11(a) and 26(g) and to have abetted the violation of Local Rule 11.1.B. It is RECOMMENDED that the Court impose a civil contempt fine on Mr. Smolar of an amount to be determined at a later hearing.

3. **RECOMMENDED** that the District Court Suspend Mr. Smolar from the Federal Bar and Report his actions to the Grievance Committee of the Florida Bar.

4. **RECOMMENDED** that the District Court Refer this entire matter to the United States Attorney's Office for an examination of whether any federal criminal statutes have been violated, including, but not limited to, 18 U.S.C. §§ 1341 and 1951.

5. **RECOMMENDED** that the United States District Court retain jurisdiction to entertain

Scanned Image - 9:98CV6621 Document 432 page 44 Mon Feb 21 09:46:32 2000

a Motion for Defendants' Attorney's Fees in this action under 28 U.S.C. § 1927 and Fed.R.Civ.P. 26(g)(3), in light of Plaintiff's, Mr. Smolar's, and Mr. Neiman's signature and disclosure violations of Rule 26, bad faith obstruction of discoverable material, and for vexatiously defrauding the Court. See Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1545-46 (11th Cir. 1993).

In that regard, contingent upon the District Court's Adoption of this Report and Recommendation, Defendants shall file fee and costs affidavits within twenty (20) days after the District Court Adopts the Recommendations herein.

**6. RECOMMENDED** that the District Court **DISMISS** this Action With Prejudice. The Court recognizes that dismissal is an extremely harsh sanction, which is only appropriate as a last resort. Malutea, 987 F.2d at 1542 (citing Navarro v. Cohan, 856 F.2d 141, 142 (11th Cir. 1988)). However, after careful consideration, the undersigned has concluded that dismissal is warranted in the present case. Plaintiff and his cohorts have relentlessly scoffed at the Federal Rules of Civil Procedures, the Rules of professional conduct, and warnings from other Courts in this District. They have willfully obstructed discovery and continue to conceal facts after having been sanctioned by Judge Seltzer for their discovery abuses in this case. They They attempted to extort a class action settlement out of Defendants. The Court finds that lesser sanctions will not deter Plaintiff and his accomplices from their continued abuse of the judicial system.

### Violations of Rule 11(a) & 26(g)

As discussed, the actions of Plaintiff's counsel and Mr. Neiman, his putative paralegal, constitute blatant violations of the signature requirements of Federal Rules of Civil Procedure

11(a) and 26(g). These violations were not promptly corrected. Rules 11(a) and 26(g) provide for striking offending documents. However, striking a document may be effective only if the violation is uncovered before any response is made.    Plaintiff's Complaint is defective and the undersigned has found that the Amended Complaint does not constitute a prompt correction. The remaining violations are so pervasive that to retroactively strike the 36 violative documents will leave a huge crater in the heart of this action. Not only will the Court be required to retroactively attempt to undo the damage caused to the record by the 36 forged court papers, but it would be forced to readdress the responses made by Defendants and by this Court to each of them.

Two examples suffice. First, Defendant ALSPA, an Italian corporation, moved to invoke the procedures of the Hague Evidence Convention. D.E. 87. Plaintiff filed a response in opposition. D.E. 97. Judge Seltzer addressed the motion and ruled in favor of Plaintiff, denying Lamborghini's motion. D.E. 207 at ¶6. However, the response in opposition was filed under a Neiman-forged signature. Def. Ex. 11/19-6; (QPS-38). Under Rule 11(a), ALSPA's motion would have been treated as unopposed. Without opposition, Judge Seltzer may well have ruled on the Motion in ALSPA's favor.

Similarly, Plaintiff served his first Request for Production of Documents to ALUSA under a Neiman-forged signature. (QPS-04). ALUSA filed objections and Plaintiff moved to compel. D.E. 73. Judge Seltzer denied that motion. D.E. 207 at ¶ 3. The Court now knows that Plaintiff's request to produce should have been treated as a nullity. ALUSA should never have had to spend time and incur expenses responding to it, and Judge Seltzer should have never had to expend judicial resources considering the motion to compel.

Scanned Image - 0:96CV6621 Document 432 page 46 Mon Feb 21 09:46:36 2000

As with these two examples, each of the 36 court papers provoked a response from Defendants or the Court. It would be almost impossible for the parties or the Court to undo these responses, and this action has been hopelessly contaminated.

Therefore, due to the multiplicity and waste of judicial resources involved in remedying the violations caused by the willful forgeries of Mr. Neiman, the real party in interest in the action, the Court RECOMMENDS Dismissal Pursuant to Rules 11(a) and 26(g) of the Federal Rules of Civil Procedure.

### Federal Rule of Civil Procedure 17

Plaintiff is not the proper party in this lawsuit. He is not the real party in interest and he lacks standing because he has not suffered any injury-in-fact. See Fed.R.Civ.P. 17.

Federal Rule of Civil Procedure 17(a) provides that "no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of, commencement of the action by, or joinder or substitution of, the real party in interest . . ." Fed.R.Civ.P. 17(a).

Plaintiff and Mr. Neiman have not sought to cure their Rule 17 violation within a "reasonable time." Plaintiff and Mr. Neiman made two untimely attempts in May of 1999, almost one year after this Action began, to join or substitute Mr. Neiman, in his personal capacity, as a Plaintiff or the sole Plaintiff. D.E. 211, 230. The Court finds that eleven months after the Complaint was filed, and ten months after Defendants first raised the issue is not a reasonable time. Only after his deceit was unveiled did Mr. Neiman admit to any involvement (D.E. 181 at 27), and he delayed an additional four months before attempting to enter the action. To date, Plaintiff continues to deny that Mr. Neiman has any interest in the

Lamborghini. Yet, as Plaintiff has spent no money on the Lamborghini at all, either to buy it or maintain it, and does not own it, he will not be injured by dismissal of this action. Accordingly, the Court RECOMMENDS that this action be Dismissed Pursuant to Rule 17 of the Federal Rules of Civil Procedure.

### The Inherent Power of the Court

When a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons," the Court may exercise its inherent powers as a basis for rendering sanctions. Chambers v. Nasco, 501 U.S. 32, 45-46 (1991); see Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998).

This case is fraught with bad faith. The Complaint was signed by Brian Neiman masquerading as an attorney with firsthand knowledge that the allegations contained therein were false. Plaintiff and his legal staff engaged in rampant and persistent efforts to thwart legitimate discovery efforts of Defendants to such an extent that they have been sanctioned five (5) times by Judge Seltzer. They tried to cover up any evidence that would reveal that the purchase transaction was entered in bad faith and that Plaintiff's legal team attempted to extort a large settlement, the nature of which had previously been judicially decried as "blackmail." Moreover, Plaintiff continues to cloud the truth in this matter, even up to and during the hearings in these very proceedings.

Mr. Neiman and Mr. Smolar were warned by other judges of this District that their tactics were unacceptable. Barnett v. Doctors & Assoc., Inc., Case No. 95-6837; Adams v. Bell South Telecommunications, Inc., Case No. 96-2473. Yet, far from being deterred, they engaged in offending conduct here that, in its totality, far exceeds that committed in those cases. While lesser sanctions may be appropriate in another case that is less extreme, dismissal is the only

Scanned Image - 0:96CV6621 Document 432 page 48 Mon Feb 21 09:48:40 2000

remedy that will tell the Plaintiff, Mr. Smolar, and Mr. Neiman that their charades will not be tolerated. They have abused the system for financial gain and have defrauded this Court. Based on the severity and pervasiveness of the Plaintiff's actions, it is <u>RECOMMENDED that the District Court exercise its Inherent Powers and Dismiss this Action With Prejudice</u>.

7. **RECOMMENDED** that Plaintiff's Motion for Sanctions Against ALUSA, ALSPA, Winthrop, Stimson, Putnam & Roberts and Mullin & Galloway, P.A., Pursuant to 28 U.S.C. §1927 and the Court's Inherent Power to Sanction be **DENIED**.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. <u>LoConte v. Dugger</u>, 847 F.2d 745 (11th Cir. 1988), <u>cert. denied</u>, 488 U.S. 958 (1988); <u>RTC v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).

**RESPECTFULLY SUBMITTED**, on January 31, 2000, at West Palm Beach, Florida.

LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE

CC:    The Honorable William P. Dimitrouleas
       Mr. Harris K. Solomon, Esq.
          Brinkley, McNerney
          200 E. Las Olas Blvd., Suite 1800
          P.O. Box 522
          Ft. Lauderdale, FL 33302-0522
       Mr. John M. Mullin, Esq.
          Duke, Mullin & Galloway, P.A.
          1700 E. Las Olas Blvd., Suite PH-1
          Ft. Lauderdale, FL 33301
       Mr. John C. Dotterrer, Esq.
          Winthrop, Stimson
          125 Worth Ave., Suite 310
          Palm Beach, FL 33480
       H. Dohn Williams, Jr., Esq.
          P.O. Box 1722
          Ft. Lauderdale, FL 33302

Scanned Image - 0:98CV6621 Document 432 page 50 Mon Feb 21 09:46:42 2000

Chart 9 • Page 1

## *Court Documents Signed by "Writer B" in the Name of Saul Smolar*
### *Southern District of Florida Case No. 98-6621 Dimitrouleas*
### *Magistrate Barry S. Seltzer*

| Item | Date | Docket | Document Name |
|------|------|--------|---------------|
| QPS-01 | 6/15/98 | 1 | Complaint. |
| QPS-02 | 6/23/98 | | Plaintiff's First Set of Rule 26.1.G Interrogatories to Defendant Automobili Lamborghini, U.S.A. |
| QPS-03 | 6/23/98 | | Plaintiff's Second Set of Interrogatories |
| QPS-04 | 6/23/98 | | Plaintiff's First Request for Production of Documents to Defendant Automobili Lamborghini, USA |
| QPS-04a | 6/23/98 | | Plaintiff's First Set of Interrogatories to Defendant Prestige Imports |
| QPS-05 | 6/23/98 | | Plaintiff's Second Set of Interrogatories to Defendant Prestige Imports. |
| QPS-06 | 6/24/98 | | Plaintiff's First Request for Production of Documents to Defendant Prestige Imports. |
| QPS-07 | 7/15/98 | | Notice of Taking Video Deposition [of person with most knowledge re Lamborghini vehicles that have caught fire] |
| QPS-08 | 7/15/98 | | Notice of Taking Video Deposition [of person with most knowledge re Automobili Lamborghini USA, Inc.'s Answer and Affirmative Defenses] |
| QPS-08b | 7/29/98 | | Plaintiff's Second Request for Production of Documents to Defendant Automobili Lamborghini, USA. |
| QPS-10 | 7/29/98 | | Plaintiff's Third Set of Interrogatories to Defendant Automobili Lamborghini USA Inc. |
| QPS-11 | 7/29/98 | | Plaintiff's Second Request for Production of Documents to Defendant Automobili Lamborghini, USA. |
| QPS-13 | 8/18/98 | | Plaintiff's Response to Defendant Automobili Lamborghini USA's First Request for Production. |
| QPS-16 | 9/11/98 | | Plaintiff's Response to Defendant, Automobili Lamborghini USA's Second Request to Produce to Plaintiff. |

Appendix 1

Chart 9 • Page 2

| Item | Date | Docket | Document Name |
|------|------|--------|---------------|
| QPS-19 | 9/16/98 | | Notice of Filing 9/15/98 Letter of Jim Stock in Support thereof. |
| QPS-24 | 10/29/98 | | Plaintiff's First Request for Production of Documents to Defendant Automobili Lamborghini, SpA. *(Duplicate of Item 25)* |
| QPS-25 | | | Plaintiff's First Request for Production of Documents to Defendant Automobili Lamborghini, SpA. |
| QPS-26 | 10/30/98 | | Plaintiff's Second Request for Production of Documents to Defendant Automobili Lamborghini USA. |
| QPS-27 | 11/9/98 | 77 | Plaintiff's Reply in Support of His Motion for Protective Order. |
| QPS-28 | 11/11/98 | | Plaintiff's First Request for Production of Documents to Defendant Exclusive. |
| QPS-29 | 11/12/98 | | Plaintiff's Second Request for Production of Documents to |
| QPS-30 | 11/12/98 | | Plaintiff's Second Request for Production of Documents to Defendant Exclusive. |
| QPS-31 | 11/12/98 | | Plaintiff's Second Set of Interrogatories to Defendant Exclusive. |
| QPS-32 | 11/12/98 | | Plaintiff's Third Request for Production of Documents to Defendant Automobili Lamborghini USA. |
| QPS-33 | 11/12/98 | | Plaintiff's Notice of Compliance and Response to Defendant Automobile Lamborghini USA's First Request for Production. |
| QPS-34 | 11/17/98 | 83 | Plaintiff's Response to Defendant Automobili Lamborghini USA's Motion to Compel Answers to Interrogatories. |
| QPS-35 | 11/17/98 | 84 | Plaintiff's Notice of Objection of Consent to Disposition by U.S. Magistrate. |
| QPS-37 | 12/3/98 | 93 | Plaintiff's Response to Defendant Automobili Lamborghini USA's Motion to Strike. |
| QPS-38 | 12/9/98 | 97 | Plaintiff's Response in Opposition to Defendant Automobili Lamborghini SPA's Motion for Protective Order and to Invoke Procedures of Hague Evidence Convention and Incorporated Memorandum of Law. |

Chart 9 • Page 3

| Item | Date | Docket | Document Name |
|------|------|--------|---------------|
| QPS-39 | 12/9/98 | 101 | Plaintiff's Response in Opposition to Defendant Automobili Lamborghini USA's Motion to Compel Compliance with Subpoena or for Contempt as to Brian Neiman. |
| QPS-40 | 12/16/98 | 103 | Plaintiff's Unopposed Motion for Appointment of Special Master to Attend Depositions. |
| QPS-41 | 12/17/98 | 108 | Plaintiff's Notice of Filing Lamborghini's March 4, 1997 Letters Containing the Written Misrepresentation Made by Defendants as to Vehicle's use as a "Daily Driving" Car and Lamborghini's Misrepresentation that Tropical Sportscar Center is an "Authorized" Lamborghini Service Station. |
| QPS-42 | 12/22/98 | | Plaintiff's Motion for Enlargement of Time to File Objections to Defendant Automobili Lamborghini, USA's Subpoena Duces Tecum. |
| QPS-43 | 12/22/98 | | Plaintiff's Unopposed Motion for Enlargement of Time to File Response in Opposition to Defendant Exclusive, Inc.'s Motion for Final Summary Judgment and Incorporated Memorandum of Law. |
| QPS-44 | 12/22/98 | | Plaintiff's Motion for Enlargement of Time to File Response in Opposition to Defendant Automobili Lamborghini, USA Inc.'s Motion to Compel Production of Documents and for Sanctions with Memorandum. |
| QPS-45 | 12/24/98 | 111 | Plaintiff's Motion for Enlargement of Time to File Response in Opposition to Defendant Automobili Lamborghini, USA Inc.'s Third Request to Produce to Plaintiff. |
| QPS-46 | 12/24/98 | 110 | Plaintiff's Motion for Enlargement of Time to File Response in Opposition to Defendant Automobili Lamborghini, USA Inc.'s Fourth Request to Produce Documents to Plaintiff. |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 00-6202-CIV-(LENARD)/Magistrate Judge (TURNOFF)

KAREL G. JOHNSON, and
LISE H. JOHNSON, his wife,

      Plaintiff(s),

vs.

AUTOMOBILI LAMBORGHINI SpA,
MICHAEL KIMBERLY, JON DOE I,
JON DOE II, and JON DOE III, Individually,

Defendant(s).
_____/

## ORDER ON DEFENDANT LAMBORGHINI's MOTION FOR CHANGE OF VENUE

    **THIS CAUSE** having come before the Court on Defendant, Automobili Lamborghini, SpA's ("Lamborghini"), Motion for Change of Venue, the Court having reviewed the file, and being otherwise duly advised in the premises, it is thereupon

    **ORDERED and ADJUDGED** as follows:

1.     Defendant, Lamborghini's Motion for Change of Venue, is **GRANTED.**

2.     This action is hereby referred in its entirety to Judge William P. Dimitrouleas and Magistrate Judge Lennea R. Johnson in the West Palm Beach Division of the United States District Court for the Southern District of Florida.

**DONE and ORDERED** in Chambers in Miami, Florida this _____ day of

_____, 1999.


_____
JOAN A. LENARD
United States District Court Judge

Copies furnished to:
Myron Shaprio, Esq.
Harris K. Solomon, Esq.

H:\WP\DATA\MJS\Lamborghini\OrderonVenue.wpd

-2-