**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

KAREL G. JOHNSON, and
LISE H. JOHNSON, his wife,

      Plaintiffs,

vs.

CASE NO. 00-6202-CIV-DIMITROULEAS
Magistrate Judge Johnson

AUTOMOBILI LAMBORGHINI SpA,
MICHAEL KIMBERLY, JON DOE I,
JON DOE II, and JON DOE III, Individually,

      Defendants.

_____/

NIGHT BOX
FILED

JUL 1 0 2001

CLARENCE MADDOX
CLERK. USDC / SDFL / FTL

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL BETTER ANSWER TO INTERROGATORY AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs Karel and Lise Johnson, by and through undersigned counsel, hereby submit their Reply in Support of Motion to Compel Better Answer to Interrogatory and Incorporated Memorandum of Law. In support, Plaintiffs state as follows:

### I.    INTRODUCTION

Defendant, Automobili Lamborghini SpA's, Opposition to Plaintiffs' Motion to Compel Better Answer to Interrogatory and Incorporated Memorandum of Law Dated June 4, 2001, and Motion for Attorneys' Fees and Costs ("Opposition"), makes three primary arguments. First, Lamborghini argues that Plaintiffs' adherence to the 30 day deadline for filing a motion to compel, set forth at S.D. Fla. L.R. 26.1.H.1, constitutes sanctionable bad faith. Second, Lamborghini declares that it has fully responded to Plaintiffs' interrogatory. Third, Lamborghini argues that recall information relating to some but not all 1997 Diablo Roadsters is not discoverable. However, as set forth below, none of these arguments has merit. Therefore, Plaintiffs' Motion to Compel

should be granted, and the Court should order Lamborghini to fully answer the interrogatory

forthwith, award Plaintiffs' their reasonable attorneys fees incurred as a result of Lamborghini's

failure to properly answer Plaintiffs' interrogatory, and deny Lamborghini's Motion for Attorneys

Fees and Costs.

## II.    PLAINTIFFS HAVE COMPLIED IN GOOD FAITH WITH THE LOCAL RULES

Local Rule 26.1.H.1 provides:

> *Time for Filing*. All motions related to discovery, including but not
> limited to motions to compel discovery and motions for protective
> order, **shall be filed within thirty (30) days of the occurrence of
> grounds for the motion**. Failure to file discovery motion within
> thirty (30) days, absent a showing of reasonable cause for a later
> filing, may constitute a waiver of the relief sought.

(emphasis added). The rules do not clarify what is the "occurrence" that triggers the thirty day

period, nor do they clarify what constitutes "reasonable cause" for later filing. Likewise,

undersigned counsel has been unable to locate case law on either of these issues, and Lamborghini

has cited none. The Comments to the Rule do not resolve the issue, as they merely state: "Rule

26.1.H.1 is added to ensure that discovery motions are filed when ripe and not held until shortly

before the close of discovery or the eve of trial." Lastly, Section VI.C of the Southern District's

Discovery Practices Handbook, Appendix A to the Local Rules, relating to the time for filing a

motion to compel, gives little guidance as it merely restates the language set forth in Local Rule

26.1.H.1.

Plaintiffs believe that the most logical reading of Local Rule 26.1.H.1 is that the

"occurrence" contemplated by the Rule is the making of the objection or the failure to properly

2

respond by the party responding to the discovery request. Any other reading creates great uncertainty as the moving party can rarely be sure when the clock has started to run. Therefore, due to the rule's ambiguity, and faced with the possibility of waiving the right to file a motion to compel, the prudent course for the party seeking discovery is to file the motion within 30 days of the making of the objection or failure to respond, a course which was followed by Plaintiffs in this case.

Lamborghini's argument that Plaintiffs created an artificial and untenable deadline fails for the additional reason that any perceived exigency was caused by Lamborghini when it waited more than two full weeks to respond to the May 17, 2001 letter sent by undersigned counsel, which is attached hereto as Exhibit A.[1] Additionally, when assessing the reasonableness of the respective parties actions, it should be made clear that as of June 4, Lamborghini's interrogatory response had not been properly signed or sworn to, documents which formed a major portion of the response had been omitted, and no explanation regarding either omission had been offered to Plaintiffs. On page 6, footnote 2 of its Opposition, Lamborghini states that "recall materials should have been provided as part of the answer to the interrogatory but were inadvertently omitted." However, Lamborghini's initial response makes no mention of its intention to provide documents, but rather says that "[c]ounsel for Automobili Lamborghini have possession of NHTSA recall file 98 V 030 which may be examined by counsel for plaintiffs." Plaintiffs find it difficult to believe that Lamborghini

---

[1] Lamborghini's May 31, 2001 letter, intended to be sent only by U.S. Mail, was faxed at 3:08 p.m. on Friday, June 1, 2001, only after undersigned counsel inquired of Michael Scaglione, Esq. (in Mr. Shapiro's absence), as to the status of Lamborghini's response to the May 17, 2001 letter. During that call, undersigned counsel informed Mr. Scaglione that the deadline to file the motion to compel was June 4, 2001. It was at this point that Mr. Scaglione investigated the matter and located the May 31, 2001 letter, which had been drafted and signed, but not yet sent. The original mail copy of the letter was not received until June 4, 2001.

3

inadvertently omitted materials, as it never gave any indication that anything was being provided from which an omission could occur. Lamborghini's initial requirement that Plaintiffs' counsel travel from Fort Lauderdale to Miami in order to inspect 31 pages of documents[2] was nothing more than a delay tactic. Given Lamborghini's cavalier and dilatory approach to properly answering the interrogatory, and now having the benefit of hindsight in assessing the failed discussions which took place prior and subsequent to the filing of the motion, Plaintiffs justifiably believe that had they not filed the motion to compel in a timely manner, Lamborghini would have attempted to drag out the process indefinitely.

Undersigned counsel has attempted in good faith to resolve the issues raised in the motion both prior to its filing, as contemplated by S. Fla. L.R. 26.1.1, and also subsequent to its filing. The cases Lamborghini cites at page 5 of its Response do nothing to change this conclusion, as they each involve situations where either the conference never took place or the motion was filed within hours of the discussion being initiated. Sattar v. Motorola, Inc., 138 F.3d 1164 (7th Cir. 1998)(no conference took place); Haselhorst v. Wal-Mart Stores, Inc., 163 F.R.D. 10 (D. Kansas 1995)(movant never filed required certificate, or reply brief, so respondent's assertions stood unrebutted); Alexander v. Federal Bureau of Investigation, 186 F.R.D. 197 (D.D.C. 1999)(motion filed less than two hours after message left with opposing counsel); Echostar Communications Corp. v. The News Corporation Limited, 180 F.R.D. 391 (D. Colo. 1998)(opposing counsel given four hours deadline before motion filed). This case is far different from those cited by Lamborghini, in

_____

[2] In total, Lamborghini has provided 16 pages on June 1, 2001, 6 pages on June 8, 2001, and 9 pages on June 12, 2001. Although the last items were sent via Fedex dated June 7, 2001, they were not actually received by Plaintiffs' counsel until June 12, 2001.

4

that undersigned counsel initiated the discussion nearly three weeks prior to filing the motion, and continued the discussions for nearly another two weeks afterward in the hope that it might be withdrawn.

### III.    LAMBORGHINI HAS NOT FULLY RESPONDED TO THE INTERROGATORY

Although Lamborghini believes it now has fully responded to the Interrogatory, the response it has made only demonstrates its insufficiency. Lamborghini argues that it "has actually provided a factual chronology of events which lead to the issuance of the recall campaign which is precisely what the interrogatory sought." (Opposition ¶15)(emphasis added). This simply is not the case. Plaintiffs have requested "all of the facts which you were aware which led you to issue said notice of safety warning." While the material submitted by Lamborghini is a start, it does not fully answer the interrogatory.

Referring to the chronology which Lamborghini provided on June 12, 2001, and which is attached hereto as Exhibit B, Plaintiffs believe that disclosure of the following information is necessary for a complete response to their interrogatory:

1.    The name of the customer and the substance of the complaint which was made in September 1996.

2.    The names of the customers and the substance of their complaints which were made between November 1996 and August 1997.

3.    Details regarding the report by a Factory Technician to the Factory Service Department in September 1997.

4.    Details regarding the replacement of the Micro Switch/Door Latch assembly, including the name of the customer, which was replaced in October 1997.

5

5.      Details regarding the nature and substance of the discussions held during the period November 1997 to February 1998 to determine if there is a need and basis for a safety related defect determination. To the extent any of this information is privileged, sufficient information should be provided so that the applicability of the claimed privilege can be assessed.

6.      Details regarding the nature and substance of the finding submitted by the Research and Development Department to top management during the period November 1997 to February 1998.

7.      Details regarding the nature and substance of the final recommendation made to the President following director meetings during the period November 1997 to February 1998.

## IV    LAMBORGHINI IS HIDING INFORMATION RELATING TO THE 1997 MODEL DIABLO ROADSTER

In its original response, Lamborghini objected to "inquiry pertaining to recall campaigns not applicable to the subject vehicle on the grounds that it seeks information not relevant and is not reasonably calculated to lead to the discovery of admissible evidence." The manner in which this objection was posed does not make apparent exactly what information Lamborghini did not believe should be revealed.

In the June 15, 2001 letter, Plaintiffs' counsel stated: "given the fact that the documents you have produced indicate that Recall Campaign 98 V 030 related to both 1996 and 1997 models, we are unsure to what extent you still maintain certain relevance objections. In that regard, can you please inform us if Recall Campaign 98 V 030 is the only recall notice or safety warning issued for the 1996 and 1997 Diablo Roadster."

Lamborghini answers this query only in part, through the affidavit of Michael Jay Grossman, who states that "the only recall involving the 1996 Diablo Roadster model was Recall No. 98 V

030." Without saying so explicitly, the posture taken by Lamborghini in its response makes it fairly clear that it did issue recall notices for its 1997 Diablo Roadsters. Given the fact that even Lamborghini is forced to admit (Opp. Memo ¶ 20) that the 1996 and 1997 models shared characteristics, including the defect underlying Recall 98 V 030, its position that recalls affecting 1997 Diablo Roadsters are irrelevant is illogical, particularly considering the fact that these vehicles were specially assembled, limited edition vehicles. Only 44 vehicles were manufactured during what Lamborghini calls its 1996 model year and early production 1997 model year, which it claims went from April 1996 to September 1996. Plaintiffs' car was delivered in July 1996. Certainly, there stands a good chance that defects in the cars produced in the following twelve months contain similar defects to those produced during this period, and it is important to note that Plaintiffs' list of defects goes well beyond the scope of the recall 98 V 030 (see pages of Plaintiffs' Complaint attached hereto as Exhibit "C").

Lamborghini is attempting to place Plaintiffs in a Catch-22, as it wants to force them to show similarity between their vehicle and a recall campaign about which they know nothing. If Lamborghini has not recalled the similar vehicle for the issues raised by Plaintiffs, then they could have stated that. Instead, Lamborghini is attempting to hide the information about its other recalls. Plaintiffs should not be forced to accept Lamborghini's word on the issue of whether those defects impacted characteristics shared with the 1996 model. Plaintiffs have a right to discover the information to determine whether or not the focus of the recalls were defects present in the Johnson vehicle. If Lamborghini's contention with respect to the relevance of this information turns out to be correct, then it is unlikely that they will be admissible at trial. However, this discovery is

7

reasonably calculated to lead to the discovery of admissible evidence, and it is not necessary that the information be admissible at trial in order for it to be discoverable. Fed. R. Civ. P. 26(b)(1)(2001).

One case cited by Lamborghini supports the idea that these materials should be discoverable, even if they turn out to later be inadmissible. In Jordan v. General Motors Corp., 624 F. Supp. 72 (E.D. La. 1985), which deals with the admissibility of evidence at trial, the fact that plaintiffs were attempting to introduce recall materials at trial indicates that they were discoverable, otherwise they would have had nothing to attempt to introduce. Nissan Motors Corp. v. Espinosa, 716 So. 2d 279 (Fla. 4th DCA 1998) is distinguishable from the instant matter because in that case plaintiff, who was driving a 1985 Nissan 300 ZX when injured, requested information involving all Nissan automobiles from 1980 to 1989. In this case, Plaintiffs, who bought a 1996 Diablo Roadster, are requesting information regarding only the Diablo Roadster for 1996 and 1997. Uitts v. General Motors Corp., 62 F.R.D. 560 (E.D. Pa. 1974) is distinguishable because the plaintiff was requesting information regarding a completely different model vehicle. Id. at 561. As stated above, Plaintiffs are requesting information regarding the same vehicle, the Diablo Roadster.

The cases cited by Lamborghini for the proposition that Plaintiff should be prevented from conducting a "gargantuan fishing expedition" simply have no bearing in this case. Plaintiffs are seeking a limited amount of information. Lamborghini has never raised an objection with respect to overbreadth or undue burden. Indeed, Lamborghini would be hard pressed to do so, given the fact that they have provided a total of 31 pages in response to the Interrogatory. Plaintiffs assume that production with respect to other recall campaigns would be of a similar volume, and also assume

8

that this information is readily available to Lamborghini. Therefore, Plaintiffs are not requesting a wide range of information, nor would Lamborghini be unduly burdened if required to disclose such information.

## V.  **CONCLUSION**

Lamborghini has forced Plaintiffs to do an unreasonably large amount of work in order to get a proper response to one question, all the while claiming that Plaintiffs have acted unreasonably in attempting to get the response to which they are entitled. The response Lamborghini has made with respect to Recall 98 V 030 is insufficient. Also, it is clear that Lamborghini possesses discoverable information relating to recall of 1997 Diablo Roadsters that it desperately wishes to avoid disclosing to Plaintiffs. Plaintiffs want to know what Lamborghini is trying to hide, and this Court should too.

WHEREFORE, Plaintiffs Karel and Lise Johnson respectfully request this Honorable Court enter an Order compelling Lamborghini to make a better response to their Interrogatory, awarding payment of its reasonable expenses, including attorneys fees, incurred in making this motion, denying Lamborghini's Motion for Attorneys Fees and Costs, and to order any other relief it deems just and proper.

9

CASE NO. 00-6202-CIV-DIMITROULEAS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. mail this __10Th__ day of __July__, 2001, on Myron Shapiro, Esq., Attorney for Defendant Lamborghini, Herzfeld & Rubin, Brickell Bayview Centre, 80 SW 8th Street, Suite 1920, Miami, Florida 33130.

> BRINKLEY, McNERNEY, MORGAN
> SOLOMON & TATUM, LLP
> Attorneys for Plaintiffs
> 200 East Las Olas Boulevard, Suite 1900
> Fort Lauderdale, Florida 33301-2209
> (954) 522-2200
> (954) 522-9123 (fax)

By: _____

> HARRIS K. SOLOMON
> Florida Bar No. 259411
> MARK A. LEVY
> Florida Bar No. 121320

10

EXHIBIT "A"

BRINKLEY, McNERNEY, MORGAN, SOLOMON & TATUM, LLP

ATTORNEYS AT LAW
SUITE 1900
NEW RIVER CENTER
200 EAST LAS OLAS BOULEVARD
FORT LAUDERDALE, FLORIDA 33301-2209

W. MICHAEL BRINKLEY
KEVIN P. CROSBY **
KENNETH E. KEECHL
DONALD J. LUNNY, JR.◊
MICHAEL J. McNERNEY +
PHILIP J. MORGAN +
HARRIS K. SOLOMON +
ROBERTA G. STANLEY ++
THOMAS R. TATUM
STEPHEN L. ZIEGLER

TELEPHONE (954) 522-2200
FACSIMILE (954) 522-9123
e-mail: lawfirm@brinkleymcnerney.com

MAILING ADDRESS:
POST OFFICE BOX 522
FORT LAUDERDALE, FLORIDA 33302-0522

SCOTT P. CHITOFF
LOUIS R. GIGLIOTTI
KENNETH A. GORDON
DAVID F. HANLEY
KENNETH J. JOYCE
JEFFREY S. KURTZ
JOHN N. LAMBROS
MARK A. LEVY
JULIETTE E. LIPPMAN
JONATHAN M. STREISFELD
VERONICA VILARCHAO

+ BOARD CERTIFIED BUSINESS LITIGATION LAWYER
* BOARD CERTIFIED REAL ESTATE LAWYER
++ BOARD CERTIFIED MARITAL AND FAMILY LAWYER
** REGISTERED PATENT ATTORNEY
◊ BOARD CERTIFIED CITY, COUNTY &
   LOCAL GOVERNMENT LAWYER

JOHN R. TATUM
(1926-1995)

May 17, 2001

Myron Shapiro, Esq.
HERZFELD & RUBIN
Brickell Bayview Centre
80 SW 8ᵗʰ Street, Suite 1920
Miami, Florida 33130

       Re:    Johnson v. Automobili Lamborghini, SpA,
             Case No. 00-6202-CIV-DIMITROULEAS

Dear Mr. Shapiro:

We are in receipt of the Response of Automobili Lamborghini S.p.A. to Plaintiffs' Interrogatory, which was served on May 3, 2001. With respect to the NHTSA recall file 98V030 which you make available for examination, please advise as to how voluminous that file is, as we may wish to have the entire file copied rather than travel to Miami for an inspection.

With respect to your objection regarding inquiry pertaining to recall campaign not applicable to the subject vehicle, we do not believe that this objection has foundation. Therefore, pursuant Local Rule 26.1.I, we are making a good faith effort to resolve this dispute in lieu of filing a Motion to Compel.

The allegations in Plaintiffs' Complaint are that their Lamborghini, and all other similar Lamborghinis, are defective. Information that the company has regarding such defects most certainly is relevant and reasonably calculated to lead to the discovery of admissable evidence. Furthermore, the Interrogatory requests an explanation of all facts which Lamborghini was aware of that led to the issuance of the notices and safety warnings. I do not believe that a mere reference to documents sufficiently responds to this request.

I look forward to your response.

Very truly yours,

Harris K. Solomon

EXHIBIT "B"

o ₹∨− ·₃ͻ Ⓢ

Vehicles produced after those subject to this Recall have already been fitted
with the modified components.

-    For reference, please see attached Sketches **A**, **B**, and **C**.

6.    Chronology of Events :

| | |
|---|---|
| 9/96 | Initial report of an incident with a customer complaining of a "lock-out" problem. |
| 11/96-8/97 | A few additional customer problems concerning the reliability of the window retraction system are reported. During this period, three Micro switch / Door Latch assemblies are replaced |
| 9/97 | A vehicle is examined in detail by a Factory Technician who reports back to the Factory Service Department. |
| 10/97 | Another Micro Switch / Door Latch assembly is replaced. |
| 10/97 | LAMBORGHINI management requests a comprehensive study be undertaken to determine the cause of this unusual problem. |
| 11/97 | Inter-Departmental meetings are held as studies are conducted to examine all possible scenarios. |
| to | Problem seems to be narrowed to the probable mis-assembly of the Micro Switch and Door Latch System. |
| | Discussions are begun with US legal and regulatory counsel to determine if there is a need and basis for a safety related defect determination. |
| | Research and Development Department submits its findings to top management |
| 2/98 | Director meetings are held and a final recommendation is sent to the President. |
| 2/2/98 | Information is begun to be assembled for the preparation of the Defect Information Report as well as the Dealer and Owner Notification letters. |
| 2/6/98 | Despite the provision of a manual crank to lower the window in the case of an emergency, LAMBORGHINI wishes to minimize the possibility that a failure may occur. Therefore, LAMBORGHINI's President makes the final decision that there is a Safety Related Defect and to initiate a full Recall Campaign. |

4

⁰⁰ᵛ⁻ ⁹⁰ (5)

NO ACCIDENTS AND NO INJURIES HAVE BEEN REPORTED TO DATE.

7. Manufacturers Program :

Notification of an Official Safety Recall Campaign is sent to the owners of the affected vehicles. The owners are requested to bring their vehicle to the most convenient LAMBORGHINI Dealer for :

    a.  An Inspection of each automatic window retraction system on the vehicle to determine if it is defective.

    b.  If both systems on the vehicle are non-defective, the vehicle will be labeled "Completed - Recall Campaign No.98 V XXX" and returned to the owner.

    c.  If either one and/or both of the vehicles systems are defective :

        (i)    The defective system(s) will be replaced, free of charge with the new, modified version of the micro switch and latch assembly.

        (ii)   The vehicle will be labeled "Completed-Recall Campaign No. 98 V XXX and returned to the owner.

8. Notices, Bulletins and Other Communications :

At this time, no notices, bulletins or other communications have been sent to dealers or purchasers. However, copies of those notices and bulletins currently under preparation will be forwarded to you upon their completion and prior to their distribution.

EXHIBIT "C"

Civil Action No.
Magistrate Judge

19.     JOHNSON detrimentally relied upon the oral and written misrepresentations of
ALSPA and its corporate executives as to those material facts at the time he made his decision to
purchase the Diablo.

20.     JOHNSON has suffered damage as a result of his reliance upon those material facts.

21.     Since the purchase of his Diablo, JOHNSON has experienced the following problems
with his Diablo:

(a)     Frequent jamming of the passenger and driver doors, thereby trapping the
passengers inside (remedied only by placing car on a hydraulic lift and "springing" the doors open);

(b)     Electronic windows, at times, cease to function;

(c)     Severe damage to the Diablo's interior due to water leakage from rain creating
a dangerous driving condition;

(d)     Severe water damage to custom luggage, due to a water leak in the trunk of
the car;

(e)     Poorly designed windshield wiper which, when activated, pushes water inside
the car;

(f)     Misplaced seat belt fastener that causes injures to the Diablo's operator's
hands and fingernails each time operator engages the buckle and fastener;

(g)     Poorly designed accelerator and brake placement, that results in the operators
foot being locked behind the brake petal after depressing the accelerator;

(h)     Poor vehicle aerodynamics and seal that cause extensive creaking and rattling
while driving the car:

5

(i)     Flashing of the steering control/ dashboard lights on a daily basis;

(j)     The sunroof latches automatically detach and swing freely after the Diablo is driven over any type of bump, striking the driver and passenger in the head;

(k)     Oil leaking onto the engine during use, causing intense smoke and a risk of fire;

(l)     The Diablo's battery fails frequently and unexpectedly, stranding the driver and any passenger(s); this required the installation of an after market battery charger, which has not solved the problem;

(m)    Little or no suspension, producing an extremely rough ride;

(n)     The Diablo cannot travel over speed bumps in shopping centers, parking lots, housing developments, malls, gas stations, grocery stores, etc., (even when the vehicle is elevated), resulting in damage to the front fender and bottom of the vehicle;

(o)     The Diablo's defective design of the gas tank and its inability to properly accommodate a U.S. gas hose nozzle make it difficult to fill the Diablo with gas, creating a 10-15 minute project each time the Diablo is refilled.

(p)     The Diablo cannot be parked in traditional parking spaces because the vehicle is so low to the pavement that the front end of the vehicle makes contact with the cement parking stop causing front end damage.

(q)     The black metal rear vent/grill and the Diablo emblem have discolored and has aged disproportionally with the rest of the vehicle creating an eyesore;

(r)     Required adjustment for loose passenger seating, and continues to be loose;

6

Civil Action No.
Magistrate Judge

(s)    The air conditioning works infrequently and when it does work it fails to cool the interior of the Diablo;

(t)    The steering control "error" light remains on at all times.

(u)    The steering wheel position lock is defective which causes the steering wheel to drop down and strike the driver in the knees while operating the vehicle;

(v)    The interior leather on the seats, door and dashboard is discolored, stained and shows signs of accelerated aging due to water saturation from the electric windows and door seals malfunctioning and allowing large quantities of water to enter the vehicle;

(w)    While operating, the targa roof latches can spontaneously release causing a risk of total detachment;

(x)    Severe burns from the engine can result from one attempting to check the oil with the "dipstick".

22.    Each of the above-referenced defects are material to JOHNSON's "daily use" and enjoyment of his Diablo.

23.    Since JOHNSON's purchase, he has not been able to drive the Diablo as a "daily driving car."

24.    JOHNSON's Diablo has been in for repairs at least ten (10) times, accumulating over thirty (30) days in repair time, and the defects still have not been remedied or fixed.

25.    All conditions precedent to the filing of this lawsuit have occurred, or have been performed or waived. In particular, Plaintiff served written notice of defect on or before June 26, 1998, after at least ten (10) attempts by the Defendant to remedy the defects.

7